[Crim. No. 1410.   Third Appellate District.—January 8, 1935.]

THE PEOPLE, Respondent, v. GEORGE ANDERSON, Appellant.

George I. Lewis for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant and his wife were convicted of robbery in the first degree upon an information filed in the Superior Court of the County of Sacramento, charging him with robbing one Henry Redmond, a taxi driver, of the sum of $4.35 on the twenty-third day of July,

1933. The defendant George Anderson prosecutes this appeal from the judgment of conviction, and from the order denying his motion for a new trial.

The only ground urged for reversal is that the actual taking of the $4.35 from Henry Redmond was accomplished in the county of Yolo. It is urged that under section 777 of the Penal Code the Superior Court of Sacramento County had no jurisdiction. That section does provide for the trial of offenses in the county where committed, but it also contains a clause reading as follows: "Except as herein otherwise provided the jurisdiction of every public offense is in the county where it is committed." Following this section are two sections of the Penal Code which we think applicable here. Section 781 of the Penal Code in part reads as follows: "When the act, or effects thereof, constituting or requisite to the consummation of the offense, occur in two or more counties, the jurisdiction is in either county."

Section 786 of the Penal Code permits prosecution to be had in any county into which property taken by burglary, robbery, larceny or embezzlement has been brought.

The transcript shows that on or about 2 A. M. of July 23, 1933, Henry Redmond, the taxi driver, received a telephone call to go to North B Street on the outskirts of the city of Sacramento, in the county of Sacramento. Arriving there he found the defendant and his wife awaiting him, who requested to be taken to certain resorts in Yolo County. Upon arriving at one of the places designated, the defendant stated that he wanted to go to Pagni's place. It appears that Redmond did not know the way, so he followed the defendant's directions. Coming to a house the taxi driver got out to look at the same. The defendant thereupon drew a pistol and commanded the taxi driver to give him his money. The taxi driver complied with this demand and turned over to the defendant $4.35, the money being in the form of two silver dollars, four fifty-cent pieces, a twenty-five cent piece and a ten-cent piece. The defendant and his wife immediately took possession of the taxi, left the driver to shift for himself, and drove back to the city of Sacramento with the money. Shortly thereafter, at a resort in the city of Sacramento, the appellant was arrested, and upon his person was found the sum of $4.35 in coins exactly corresponding with

those taken from the taxi driver, which we have herein described.

The trial was had before the court sitting without a jury. We think this evidence was amply sufficient to justify the court in coming to the conclusion that the appellant and his wife procured the taxi in the city of Sacramento, and directed the driver to proceed across the Sacramento River over into Yolo County, for the express purpose of robbing the taxi driver of whatever money might be in his possession; that the appellant and his wife immediately returned to Sacramento County, and that the appellant brought with him the money which he had obtained from the taxi driver. The procuring of the taxi under such circumstances as disclosed by the testimony we think justified the court in concluding that it was simply a part of the scheme requisite or employed for the consummation of the offense of robbery. In so far as the possession of the money was concerned, the appellant testified that his father-in-law had loaned him the sum of $10 in five-dollar bills, being a loan of $5 on each of the two previous days. The appellant's father-in-law testified to the same effect. The court heard this testimony, saw the witnesses, and of course had an opportunity of judging as to the credibility of the appellant and his father-in-law, and as appears from the record, the court concluded that such testimony was unworthy of belief. Where the means employed for the consummation of a criminal offense has a situs or location in one county, and the completed offense takes place in another, as we have seen, both counties may entertain jurisdiction. A frequent illustration of the application of this rule is found in such cases as *People* v. *Grubb,* 24 Cal. App. 604 [141 Pac. 1051], where the inducement and persuasion to induce a female to enter a house of ill repute is in one county, and the female, in pursuance thereof, journeys to another county in consummation of the scheme. In the case just mentioned the persuasion took place in the county of Los Angeles, and the consummation of the offense in the county of San Francisco.

A like illustration of the rule may be found in the case of *People* v. *Steffner,* 67 Cal. App. 1 [227 Pac. 690], where the offense of obtaining money by false pretenses was begun in one county and consummated in another. The counties of

Lassen and San Francisco were held to be counties in which a prosecution in that case would lie. See, also, the case of *People* v. *DeMartini*, 25 Cal. App. 9 [142 Pac. 898], where two counties were involved, the offense being inducing a female to enter a house of ill repute.

It is further urged that the finding of $4.35 on the person of the appellant, corresponding exactly with the money taken from the taxi driver, is immaterial and cannot be considered for the purpose of showing that the proceeds of the robbery were brought into the county of Sacramento, it being argued that the possession of the money only shows a coincidence. While it is true that the possession of stolen property is not alone sufficient to sustain a conviction, it is a circumstance to be taken into consideration. Likewise, the rule seems to be that mere possession of money is ordinarily, in and of itself, no indication that the possessor was the taker of the money charged to be taken, because in general all money is alike, etc. However, there may be particular circumstances connected with the money found in the possession of the one alleged to have taken it, which give it probative value. This is shown by the following language which we quote from section 154, volume 1, Wigmore on Evidence: ''Where the denominations of the money found, and the money taken, correspond in a fairly close way, the fact of the finding of that specific money would have probative value and be relative, because the money found is fairly marked as identical with the money taken.''

Here, we find two silver dollars, the four fifty-cent pieces, the one twenty-five-cent piece, and the one ten-cent piece found on the person of the appellant within a very short time after the commission of the robbery. The commission of the robbery took place about 2 A. M., and the arrest of the appellant was made shortly after 3 A. M. of the same morning, which, under the rule we have quoted from Wigmore as to probative value, justified the trial court in concluding that it was the same money, and therefore gave the Superior Court in Sacramento County jurisdiction. The fact that the appellant committed the robbery as alleged in the information, and as found by the trial court, is unquestioned; that is, so far as this appeal is concerned the commission of the offense is admitted only with the technical

objection that the Superior Court of Sacramento County did not have jurisdiction.

We conclude from what we have set forth that there is no merit in this appeal, technical or otherwise.

The order and judgment are affirmed.

Pullen, P. J., and Thompson, J., concurred.