[Crim. No. 2665.   Third Dist.   Apr. 24, 1956.]

THE PEOPLE, Respondent, v. GEORGE BUCHEL, Appellant.

Leonard G. Husar for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier, and Harold A. Bailin, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Defendant was found guilty by a jury upon an amended information which accused him of a violation of section 288 of the Penal Code in that he did "wilfully and lewdly commit a lewd and lascivious act upon and with the body and certain parts and members thereof of George M. Buchel, a child under the age of fourteen years, to wit, of the age of thirteen years, with the intent of arousing, appealing to, and gratifying the lust, passion and sexual desires of the said defendant." Probation was denied and defendant's motion for a new trial was denied also. Judgment was pronounced and defendant has appealed from the judgment and from the order denying his motion for a new trial.

The record shows that George M. Buchel was the son of appellant and that the parents were divorced in 1948. The wife was granted custody of the three children, George, Dorothy Carleen, and Grace Lee. From time to time thereafter, the children visited the father in California, and he in turn visited the children in Oregon. Later on, the mother returned to California and remarried. The father (defendant) did not remarry. The trial commenced July 20, 1955, and at that time he was 51 years of age. Both daughters were married. For

seven months in 1952, the son, George, lived with his sister Carleen and her husband in Detroit, Michigan. On his return to California, he lived with his mother until early in 1954, and then with her consent and because father and son were mutually interested in machinery, he went to live with his father in Calaveras County.

Commencing early in 1954, the defendant and his 13-year-old son, George, also known as Butch, lived together during a period of 1954 and 1955 which included the month of April, 1954, at the defendant's cabin at Glencoe in Calaveras County. During the early part of 1954, the defendant and Butch slept together in one bed in the cabin, except when Butch's sister, Gracie, stayed with them for a brief period in May or June. At that time Gracie and Butch slept in a trailer house which had been divided into two rooms by a blanket. After Gracie left in the latter part of June, Butch sometimes slept in the trailer and sometimes in the cabin with the defendant. According to the boy's testimony, the defendant began committing sexual acts upon his son during April of 1954.

In view of the fact that it is not contended that the evidence was insufficient to support the judgment it is unnecessary to detail the sordid and revolting acts of sex perversion which the son testified were committed on numerous occasions from about April 1, 1954, until the son went to live with his mother in April, 1955.

During this period the boy's health began to decline. He began to feel ill and nervous. He was taken to various doctors but his health did not improve until he went to live with his mother. He also failed in school during this time. The boy did not complain to others of these occurrences until about two weeks after he went to live with his mother in Railroad Flat. Report was made to the authorities within three days after he told his mother of these acts. Butch explained that his delay in complaining was because he was "scared." He was afraid that his dad would have to go to jail and that he would hurt him, the boy, when he got out of jail because of a conversation they had when the boy and his father were on the way to see a doctor in Stockton. The incident was related on direct examination as follows:

"Q. What made you think, George, that he might have to go to the penitentiary? A. Well, on the way to the specialist down in Stockton one day he said to tell them somebody back in Detroit did it to me, or otherwise he would have to go to jail."

The incident was amplified during cross-examination to the effect that defendant told the boy to say that some man had done it to him while he was in Detroit. These sexual activities continued more or less regularly from shortly after the boy came to live with the defendant until about two weeks before the boy went to live with his mother. The acts were discontinued only after the boy repeatedly complained that he was sick. After leaving his father, Butch's health and schoolwork considerably improved and he was no longer as nervous.

Defendant took the stand in his own defense and denied that he committed the acts related by his son. Several character witnesses were presented on behalf of the defendant who testified that the defendant's reputation for chastity and morality in the community was good and that the reputation of the boy for truth and veracity was bad.

In rebuttal, the prosecution presented Carleen, defendant's eldest daughter, who testified that defendant had once committed acts of a sexual nature upon her. These acts were characterized as oral copulation. The prosecution also called Grace, the 15-year-old daughter of defendant, who testified that defendant had forcibly had sexual intercourse with her during the summer of 1954 and that on another occasion he had propositioned her by offering her $20 if she would go into his bedroom with him. Grace had attempted to report this incident to her teacher who was also one of defendant's character witnesses. Defense counsel's objection to the indicated rebuttal testimony was overruled. The court refused to admit defense evidence that the boy had discussed unnatural sexual activities with one of his playmates and also cross-examination concerning the boy's having been disciplined at school for lewd and vulgar drawings and conversations with younger students.

In arguing for a reversal of the judgment and order, appellant contends that the court erred, (1) in unduly restricting the cross-examination of the prosecuting witness; (2) in allowing improper cross-examination of appellant's character witnesses; (3) in failing to give a proper cautionary instruction; and (4) in its instructions with relation to the offenses.

In support of his first contention appellant states:

"In the present case the court unduly and prejudicially restricted cross-examination by defendant in such respect. He sought by cross-examination to prove or lay the foundation for proving that about two years before the boy alleged his father committed and initiated such acts upon him in California, the boy had become familiar with such acts, actively and

passively, in Michigan. In that connection he sought to prove or lay the foundation for proving admissions made by the boy in conversations with another boy at the latter's home, and also in conversations with the mother of this other boy. And in that connection he also sought to prove or lay the foundation for proving that activities pertaining to sex had resulted in the boy being disciplined at school. That such evidence, if admitted, would have discredited or tended to discredit the testimony of the boy and demonstrate the falsity of his accusations against his father, is obvious. That it was proper cross-examination is also obvious. By the rulings of the court excluding such evidence and rejecting offers of proof defendant was deprived of a substantial part of his defense.''

The son, George, denied that he had made any such admissions or statements and the court sustained the People's objections to any further questioning as to this. Defense counsel subsequently made an offer of proof to the effect that the two boys, Tommie and the prosecuting witness, had several conversations upon the subject of sex, including discussions of unnatural sexual activities. In particular, counsel offered to prove a conversation which took place in February or March of 1954 at Tommie's home in West Point, in which the prosecuting witness had stated that he had participated in unnatural acts while ''back east'' and that during these conversations the obscene synonyms for sodomy and oral copulation were used.

We do not believe that the court erred in these rulings, nor do we believe that appellant suffered any prejudice from such rulings. The son George denied any such statements or admissions as to any such occurrences in Michigan, and conversations by the son with a schoolmate as to sex or unnatural sexual activities were not material to the issue here involved and in any event would be more harmful than helpful to appellant's case, because if they did take place they could well be regarded as the result of the acts charged against appellant and testified to by the son.

Appellant next contends that the court erred in permitting certain questions to be asked by the district attorney in his cross-examination of appellant's character witnesses. After two of appellant's witnesses had testified that his reputation for chastity was good, the district attorney was permitted on cross-examination, over appellant's objections, to ask each of them if they had heard defendant accused of immoral conduct with his daughters, and whether, if they had heard of it, it would affect their opinion of appellant.

So far as the questions asking appellant's character witnesses if they had heard reports of any sex offenses by appellant, they would not be improper if asked in good faith by the district attorney, for as stated in *People* v. *McKenna*, 11 Cal.2d 327, at pages 335-336 [79 P.2d 1065] :

" . . . In the absence of a showing of bad faith it is always within the scope of legitimate cross-examination to ask a character witness whether he has heard the person whose reputation is under investigation accused of conduct inconsistent with the character attributed to him by the witness. (*People* v. *Stevens*, 5 Cal.2d 92, 99 [53 P.2d 133].) The court properly allowed the questions asked by the district attorney.''

However, such questions should not be asked of a defendant's character witnesses unless the prosecution intends to call character witnesses in rebuttal to testify as to the bad reputation of defendant as to the traits involved. In the instant case the People called no character witnesses in rebuttal but instead called the two daughters of appellant who, over the vigorous objection of appellant's counsel, testified as to specific acts of appellant committed against them, as hereinbefore set forth. As we shall hereinafter point out, this testimony should not have been admitted, but it indicates that the district attorney was no doubt acting in good faith in asking appellant's witnesses if they had heard reports of sex offenses by appellant.

But it was not proper for the district attorney to ask appellant's character witnesses the further question whether, if they had heard reports that defendant was accused of immoral conduct with his daughters, their testimony as to his reputation for morality and chastity would be the same. As stated in *People* v. *Neal*, 85 Cal.App.2d 765, at page 771 [194 P.2d 57] :

" . . . The cross-examination should have been restricted to questions which would test the sufficiency of the foundation for the direct testimony, and should not have been extended to include inquiries as to what the witnesses might think defendant's general reputation in the community would be, or what the witnesses individually might think of him, if they had additional information. The misconduct of the district attorney in the present case was a flagrant abuse of such limited privilege of cross-examination of the character witnesses. Unless such misconduct in the cross-examination of character witnesses is discontinued it may become necessary to place further limitations upon cross-examination of such witnesses.''

And as stated in *People* v. *Beltran,* 94 Cal.App.2d 197, at page 210 [210 P.2d 238] :

"The direct examination of respondent's witnesses was limited to his general reputation. The cross-examination should not have been extended to include inquiries as to what the witnesses personally might have thought of his reputation if they had had additional information. (*People* v. *Neal,* 85 Cal.App.2d 765, 771 [194 P.2d 57].)"

The most serious error in the instant case, and one which requires the reversal of the judgment and order, was the admission in evidence of the testimony of the two daughters of appellant to the effect that appellant had committed acts of a sexual nature upon them, the older daughter testifying to a violation of section 288a of the Penal Code and the 15-year-old testifying to acts of forcible rape.

The attorney general argues that "While it is true that evidence of other crimes, excepting felony convictions, is generally inadmissible, evidence which is relevant to the crime charged is admissible despite the fact that it may show other offenses."

We are unable to agree with the attorney general that the evidence given by the two daughters was properly admissible. For as stated in *People* v. *Asavis,* 22 Cal.App.2d 492, at pages 494-495 [71 P.2d 307] :

"Not only by the appellate courts of the state of California, but also by many other courts having similar jurisdiction, it has been ruled that upon the trial of a defendant on a charge of the felonious commission by him of a sexual offense, evidence of like commission of other similar acts by the defendant with persons other than the prosecuting witness ordinarily is inadmissible. The case of *People* v. *Anthony,* 185 Cal. 152 [196 P. 47, 49], was one in which the defendant therein was charged with the commission by him of an offense of the same character as that here involved. One of the issues that was presented on that appeal related to the admissibility of evidence of the commission of similar acts by the defendant with persons other than the prosecuting witness. The court gave the question full consideration, and, in part, said : 'Our law wholly rejects this character of testimony, not because it does not tend to prove the truth of the charge, but because of a just regard for the rights of the defendant, who, if confronted by such witnesses, instead of being compelled to stand trial on one charge made against

him, would be confronted by half a dozen or more charges. Our rule confining the testimony to the crime charged in the information has only been relaxed so far as to permit testimony of similar conduct with the complaining witness.'

[Citing numerous cases.]

"In volume 16 of Corpus Juris at page 610 the rule is thus stated: 'Evidence of assaults by defendant upon, or acts of intercourse with, persons other than the prosecutrix is not admissible, unless they are parts of the same transaction; or unless statements in respect thereto are so connected in a confession with statements pertaining to the offense charged that it is impossible to exclude part of the confession without excluding all of it; or unless, according to some cases, defendant by his own testimony or otherwise claims an innocent intent.' "

While it is true that in this state the trend of decision has been to allow evidence of other crimes generally to show guilty knowledge, motive, intent or a common scheme or plan (8 Cal.Jur. 61), it is also true that in cases involving lewdness, the rule that evidence of other crimes is not admissible has not been relaxed. The rule is clearly stated in *People* v. *Huston*, 45 Cal.App.2d 596, at pages 597-598 [114 P.2d 607], as follows:

". . . The law is established in California that, in a prosecution for committing lewd and lascivious acts prohibited by section 288 of the Penal Code, evidence that defendant has perpetrated similar acts with a person or persons other than the prosecuting witness is inadmissible and, if received, is prejudicial error (*People* v. *Rogers*, 26 Cal.App.2d 371, 372 [79 P.2d 404]; *People* v. *Asavis*, 22 Cal.App.2d 492, 494 [71 P.2d 307]; 22 C.J.S., Criminal Law [1940] 1178, § 691).

"Applying the rule of law above stated to the facts in the instant case, it is clear that the trial court committed prejudicial error in permitting the prosecution to introduce over objection evidence that on prior occasions defendant with minor female children other than the prosecuting witness had committed or attempted to commit offenses prohibited by section 288 of the Penal Code.

"This court on previous occasions has directed the attention of the profession to the reasons for this rule, which are so aptly stated in the universally acknowledged pronouncement of Lord Chief Justice Hale on the subject of the crime of rape, which also applies to offenses interdicted by section 288 of the Penal Code. It is as follows:

" 'It must be remembered, that it is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent; [and we should] be the more cautious upon trials of offenses of this nature, wherein the court and jury may with so much ease be imposed upon without great care and vigilance; the heinousness of the offense many times transporting the judge and jury with so much indignation that they are over hastily carried to the conviction of the person accused thereof by the confident testimony sometimes of malicious and false witnesses.' (1 Hale P.C. (1736) 635, 636.) ''

In the case of *People* v. *Boyd,* 95 Cal.App.2d 831 [213 P.2d 724], relied upon by respondent, defendant was convicted of a violation of section 288 of the Penal Code, the act charged having been committed upon his 10-year-old daughter. The prosecutrix testified that her father committed the act while she and her younger sister were sleeping in the same bed, the sister having been asleep at the time; that about a week later he committed the same act upon her sister, they having exchanged sides of the bed as they frequently did without their parents' knowledge. Defendant contended that admission of testimony as to the offense upon the younger child was prejudicial error. In ruling that the evidence was not inadmissible the court said at pages 832-833:

". . . The general rule is that when a person is charged with the felonious commission of a sexual offense evidence of similar acts committed upon persons other than the prosecuting witness is ordinarily inadmissible. (*People* v. *Asavis,* 22 Cal.App.2d 492, 494 [71 P.2d 307].) But there are exceptions to this general rule. The evidence was admissible in the instant case for the purpose of showing defendant's lewd and lascivious intent (*People* v. *Knight,* 62 Cal.App. 143, 146 [216 P. 96] ; *People* v. *Owen,* 68 Cal.App.2d 617, 620 [157 P.2d 432] ), his disposition to commit the act charged and the probability of his having committed it (*People* v. *Jewett,* 84 Cal.App.2d 276, 279 [190 P.2d 330] ), and as tending logically and by reasonable inference to prove the commission of the act of which he was accused.''

The court stated further at page 833:

"Defendant relies upon *People* v. *Asavis, supra.* In that case the evidence which caused the reversal concerned acts upon other minors out of the presence of the prosecutrix. In the instant case the act occurred one week after the offense charged in the information, and was committed upon the

sister of the prosecutrix in the latter's presence under circumstances from which it may be inferred that defendant intended a second offense upon the prosecutrix.''

We think it is clear that *People* v. *Boyd* does not support respondent's contention that the evidence of appellant's daughters was admissible, because in the Boyd case, as pointed out by the court, the offense upon the sister of the prosecutrix was committed in the presence of the prosecutrix and under circumstances from which it could be inferred that defendant intended a second offense upon the prosecutrix.

There is no merit in appellant's contention that the court failed to give a proper cautionary instruction. The court instructed the jury that:

''. . . [A] charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and, once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the child alleged to have been involved and the defendant, if he was in the child's company at the time in question, usually are the only witnesses of their conduct.

''Therefore, I charge you that the law requires that you examine the testimony of such child with caution.''

This was a sufficient cautionary instruction (*People* v. *Romersa,* 111 Cal.App.2d 173 [244 P.2d 98] ; *People* v. *Todd,* 91 Cal.App.2d 669 [205 P.2d 453] ; CALJIC Instruction No. 527 [1953 Pocket Part] ).

Appellant's final contention is that the court committed prejudicial error in giving the following instruction:

''Evidence was offered in this case for the purpose of showing that the defendant committed other crimes than the one of which he is accused and for which he is on trial in this action, namely, that the defendant performed certain acts with his daughters, . . . Such evidence was received for a limited purpose only and not to prove distinct offenses or continual criminality but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of the crime charged against him in this action.

''You are not permitted to consider that offense for any other purpose and as to that purpose you must weigh such evidence as you do all other in the case.

''The value, if any, of such evidence depends on whether or not it tends to rebut evidence offered by the defendant as to his character.''

Respondent states that "the significance of this instruction . . . depends on the admissibility of the rebuttal evidence as to the offenses of the defendant."

We have already held that said evidence was erroneously admitted and hence it is clear that said instruction should not have been given and that it added to the prejudicial effect of the evidence that should not have been admitted.

In view of the foregoing we conclude that the errors hereinbefore set forth were highly prejudicial and that the judgment and order must be reversed.

The judgment and order are reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied May 8, 1956, and respondent's petition for a hearing by the Supreme Court was denied May 23, 1956. Shenk, J., and Spence, J., were of the opinion that the petition should be granted.