[Crim. No. 3959. First Dist., Div. One. Jan. 18, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WALTER MALLOY, Defendant and Appellant.

Charles O. Morgan, Jr., and George R. Moscone for Defendant and Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John L. Burton, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—Defendant was charged in an information with three separate counts of violating section 288 of the Penal Code (lewd and lascivious acts) and with three separate counts of violating section 702 of the Welfare and Institutions Code (contributing to delinquency of a minor). Each of the six counts charged his criminal acts with a different boy. A jury found defendant guilty as charged on all six counts. He has appealed from the judgment of conviction and from the order denying his motion for a new trial.

Defendant contends here that (1) prejudicial error was committed in the cross-examination of his character witnesses; (2) evidence of defendant's prior similar misconduct with one other than the prosecuting witnesses was erroneously admitted; (3) the denial of defendant's request to exclude certain persons from the preliminary hearing was prejudicial error; and (4) restriction of defendant's cross-examination of a prosecuting witness at the preliminary hearing constituted prejudicial error. In addition, we raised the question whether under the evidence, the Superior Court of the City and County of San Francisco had jurisdiction of some of the offenses charged. We have concluded that none of the defendant's contentions have merit, that the superior court did have juris-

diction, and that the judgment and the order denying motion for new trial should be affirmed.

Since the defendant does not question the sufficiency of the evidence to support the judgment, our recital of the facts will not detail the sordid and degrading acts of the defendant beyond the limit necessary for a proper consideration of the issues before us.

The record, considered in the light of the familiar principles governing the scope of our review, reveals evidence of the following facts pertaining to two separate incidents or series of incidents, the first occurring in September 1958 (charged in count one) and the second in January 1960 (charged in counts two to six, inclusive).

The defendant was a municipal playground director. In September 1958, while so employed at one of the playgrounds, upon the pretense that there was a ball on the roof of the playground clubhouse, the defendant requested the prosecuting witness, a boy 12 years old, to get it for him. The boy who had known the defendant for about four years, proceeded, along with the defendant, to an upstairs room adjacent to the roof. He started to go out on the roof when the defendant grabbed him, took down the boy's pants and underpants, as well as his own, and started rubbing the boy's private parts with one hand and his own with the other. The defendant had an emission. The boy testified that the defendant had touched him in the area of his private parts on approximately ten other occasions.

On January 16, 1960, the defendant while still employed as a playground director at the same playground, took five other boys for a weekend to his cabin at the Russian River. The boys were 12 and 13 years of age. They had all known the defendant for some time as a result of visiting the playground. The defendant and the five boys met at the playground on the weekend in question and from there he drove them in his car, to his cabin near Guerneville. No other persons accompanied them.

Upon their arrival the defendant purchased liquor at a nearby town and thereafter gave four of the boys whiskey and beer which they drank at the cabin. Defendant and the boys played "strip poker" under rules which required losers to remove their pants and underpants and, at defendant's suggestion, to perform certain lewd acts, not necessary to be here described, in order to get back into the game. Another game was played which required the loser to have ice cubes placed

on his private parts by the other boys, while the loser lay supine on a table. There was testimony that such games had been engaged in before at the cabin in the defendant's presence and that the defendant had provided whiskey and beer.

The party stayed at the cabin overnight. The defendant occupied the same bed with two of the boys and during the night placed his hands on their private parts.[1] The next morning during a game involving wrestling and capture, the defendant pulled down the underpants of a third boy and started to rub his privates.[2]

*The jurisdiction of the Superior Court of the City and County of San Francisco.*

After the oral argument before us, counsel for both parties, upon our request, submitted supplementary memoranda directed to the question whether under the evidence, the Superior Court of the City and County of San Francisco had territorial jurisdiction of the offenses charged in counts two to six inclusive of the information.

Count two charged that "defendant did in the City and County of San Francisco, State of California, on or about the 17th day of January, 1960" commit a lewd and lascivious act upon a certain male child in violation of section 288 of the Penal Code. Under the evidence and by reference to the boy named in count two, the act which is the subject of this charge was committed during the above-mentioned wrestling and capture incident at defendant's cabin in Sonoma County on the Sunday morning following the group's arrival there. Count three charges a separate violation of section 288 in connection with another boy as having been committed in the City and County of San Francisco on January 16, 1960. It is similarly ascertainable that the act which is the subject of count three was committed at the cabin on the night of arrival while the defendant occupied the same bed with the boy mentioned. Counts four to six charge separate violations of section 702 of the Welfare and Institutions Code (contributing to the delinquency of a minor) each count naming a different one of the remaining three boys and charging in effect that the defendant "in the City and County of San Francisco, State of California, on or about the 16th day of January

---

[1] These acts were charged in the third (violation Pen. Code, § 288) and sixth (violation, Welf. & Inst. Code, § 702) counts.

[2] This act was charged in the second count. (Violation Pen. Code, § 288.)

1960'' did commit certain acts in violation of said statute.[3]
Under the evidence and by reference to the boy respectively
named in the count, the acts charged were the drinking and
games occurring at the cabin in Sonoma County on the night
of arrival and, for count six only, the defendant's placing his
hands on the private parts of the boy mentioned while occupy-
ing the same bed at the cabin.

Section 777 of the Penal Code provides, in relevant part,
that ''. . . except as otherwise provided by law the jurisdic-
tion of every public offense is in any competent court within
the jurisdictional territory of which it is committed.''

Section 781 of said code also provides: ''When a public
offense is committed in part in one jurisdictional territory
and in part in another, or the acts or effects thereof constitut-
ing or requisite to the consummation of the offense occur in
two or more jurisdictional territories, the jurisdiction of such
offense is in any competent court within either jurisdictional
territory.''

Under the latter section the county in which prelimi-
nary arrangements for the commission of a crime are made, is
a proper county in which to prosecute the completed offense,
although the acts performed there did not constitute an essen-
tial element of the crime. (*People* v. *Abbott,* 47 Cal.2d 362,
370 [303 P.2d 730]; *People* v. *Anderson,* 90 Cal.App.2d 326,
330 [202 P.2d 1044]; *People* v. *Anderson,* 3 Cal.App.2d 521,
523 [40 P.2d 270]; *People* v. *Ortez,* 120 Cal.App.2d 469, 472
[261 P.2d 325]; *People* v. *Duffy,* 110 Cal.App. 631, 636-637
[294 P. 496].) Upon the foregoing authorities the
Superior Court of the City and County of San Francisco,
where the defendant gathered together the group of boys, and
from which he took them to his cabin, had jurisdiction of the
offenses charged under both section 288 of the Penal Code and
section 702 of the Welfare and Institutions Code. The fore-
going evidence is sufficient to support the implied finding of
the jury that the defendant had organized the weekend at his
cabin for the purpose of engaging in his sordid and depraved
conduct with the boys. This inference is justified by the fact
that such conduct was commenced almost immediately upon

---

[3]Counts four and five charge that ''said defendant did . . . furnish
and give an intoxicating liquor to [the boy] . . . and did further permit,
condone and encourage said [boy], to participate in and be a party to
lewd and indecent and obscene acts and conduct . . .'' Count six charges
all of the foregoing ''and further said defendant did commit a lewd
and lascivious act upon and with the body and private parts thereof of
the said minor . . .''

his arrival and was pursued with substantial continuity thereafter. It is fortified by the fact that he had done the same thing on previous trips to the cabin. It was not unreasonable for the jury to infer that the defendant's intent and object were the same on this occasion as on previous ones and that his collecting the boys in San Francisco and driving them to the cabin were preliminary arrangements for his sordid scheme.

*Cross-examination of defendant's character witnesses.*

Appellant complains of three kinds of questions asked by the prosecutor, over defendant's objection, during the cross-examination of appellant's character witnesses: (1) Whether the witness had heard it reported: that the defendant had touched the private parts of at least one boy at the playground; that the defendant had taken children on more than one occasion to his cabin and there given them whiskey and beer, played strip poker, placed ice cubes on their private parts, and engaged in an identified indecent act involving such parts of the body; that defendant had masturbated boys while in bed in the cabin; that defendant was accused of indecent familiarities with boys at another playground; (2) whether the witness' opinion of the defendant's reputation for morality would change if the witness had heard any of the above reports about the defendant; (3) whether the witness, a former fellow playground director, had ever given beer or whiskey to any boys with whom he worked, or permitted such boys to expose their private parts or put ice cubes on one another, or expose their private parts and engage in a certain identified indecent act involving them.

The first group of questions were proper. It is the general rule that the prosecution may cross-examine defendant's character witness on the basis of his knowledge of the defendant's good reputation and thus test the sufficiency of such knowledge on which the witness bases his conclusions. (*People* v. *Caldaralla,* 163 Cal.App.2d 32, 40-41 [329 P.2d 137] ; *Michelson* v. *United States,* 335 U.S. 469, 479 [69 S.Ct. 213, 93 L.Ed. 168], cited in *People* v. *Caldaralla, supra;* Witkin, California Evidence, p. 680 et seq.) In *People* v. *McKenna,* 11 Cal.2d 327, 335-336 [79 P.2d 1065], the rule is stated in the following language: ''In the absence of a showing of bad faith it is always within the scope of legitimate cross-examination to ask a character witness whether he has heard the person whose reputation is under investigation

accused of conduct inconsistent with the character attributed to him by the witness. (*People* v. *Stevens*, 5 Cal.2d 92, 99 [53 P.2d 133].)'' In *People* v. *Gin Shue*, 58 Cal.App.2d 625, 634 [137 P.2d 742], Mr. Presiding Justice Peters of this court declared: ''One way to test the accuracy and weight of the statement of the witness as to the existence of the good reputation of the accused is for the prosecution, in good faith, to ask the witness whether he has heard of certain rumors, occurrences or charges as to specific acts of misconduct of the accused relating in general to the traits involved in the charge . . .'' (See also *People* v. *Logan*, 41 Cal.2d 279, 287 [260 P.2d 20], quoting *People* v. *McKenna*, *supra*, and *People* v. *Gin Shue*, *supra*; *People* v. *Burwell*, 44 Cal.2d 16, 35 [279 P.2d 744]; citing *Michelson* v. *United States*, *supra*; *People* v. *Boone*, 126 Cal.App.2d 746, 750-751 [273 P.2d 350]; Witkin, California Evidence, p. 682.)

The presumption is that the prosecution acted in good faith. (Code Civ. Proc., § 1963, subd. 15; *People* v. *Cummings*, 141 Cal.App.2d 193, 200 [296 P.2d 610]; *People* v. *Burke*, 18 Cal.App. 72, 89 [122 P. 435].) *People* v. *Perry*, 144 Cal. 748 [78 P. 284], a burglary case cited by appellant, does not state a different rule. If the issue of the prosecutor's bad faith is raised by timely and adequate objection, the trial court, possessing ample powers to restrain any abuse by the prosecutor (*People* v. *Gin Shue*, *supra*, 58 Cal.App.2d at p. 635) may require him, outside of the jury's presence, to establish his good faith by showing a substantial basis for the reports, which his questions would attribute to the defendant. (*Cf. People* v. *White*, 43 Cal.2d 740, 744 [278 P.2d 9]; *People* v. *Johnson*, 178 Cal.App.2d 360, 365 [3 Cal.Rptr. 28] —First Dist., Div. Two.) The record before us discloses objections by defendant's counsel to all of the above questions asked by the prosecutor but nowhere in the record do we find that such or any objections were entered on the ground that the questions were asked by the prosecutor in bad faith or without factual basis.

Appellant, however, contends here that the bad faith of the prosecutor is shown by his failure to call character witnesses in rebuttal, and, in support of this position, relies on *People* v. *Buchel*, 141 Cal.App.2d 91, 96 [296 P.2d 113]. In *Buchel*, defendant's character witnesses testified that his reputation for chastity was good, and on cross-examination, were asked, over defendant's objection, if they had heard defendant accused of immoral conduct with his daughters. The opinion

does not disclose that defendant's objections raised the issue of the prosecutor's bad faith. The court quoted the above rule set forth in *People* v. *McKenna, supra,* 11 Cal.2d 327, declared that under such rule, the above question would not be improper if asked in good faith and went on to state: "However, such questions should not be asked of a defendant's character witnesses unless the prosecution intends to call character witnesses in rebuttal to testify as to the bad reputation of defendant as to the traits involved." (P. 96.) *Buchel* cites no authority for the foregoing statement. Nor, in our view, does the above-quoted language declare in effect that the failure of the prosecutor to call character witnesses in rebuttal is in itself prejudicial misconduct. The statement is patently dictum and considerably weakened by the fact that in *Buchel* certain testimony subsequently introduced by the prosecutor "indicates that the district attorney was no doubt acting in good faith . . ." (P. 96.)

We find nothing in the *Buchel* case suggesting a special rule for the cross-examination of witnesses in sex perversion cases and therefore supporting defendant's contention that bad faith is shown by the failure to call witnesses in rebuttal. No foundation exists in either logic or authority for a different rule in such cases. No difference in principle exists between sex perversion cases and others. No valid basis exists for presuming the bad faith of the prosecutor in the former, but not in the latter. Indeed, we find that the general rule as announced in *People* v. *McKenna, supra,* 11 Cal.2d 327, has been applied without change where, in a prosecution for violation of section 288a of the Penal Code, defendant's character witnesses were asked if they had heard that defendant had attempted to have unnatural sex relations (*People* v. *Green,* 153 Cal.App.2d 473, 478 [314 P.2d 828]) and where, in a prosecution for violation of section 288 of the Penal Code, such witnesses were asked if they had heard defendant was cohabiting with a woman not his wife. (*People* v. *Boone, supra,* 126 Cal.App.2d 746, 751.)

With respect to the second group of questions, as this court stated in *People* v. *Boone, supra,* 126 Cal.App.2d 746, 751: "there appears to be a divergence of opinion." In *Boone,* we referred to *People* v. *Beltran,* 94 Cal.App.2d 197, 210 [210 P.2d 238], which held such a question improper, citing *People* v. *Neal,* 85 Cal.App.2d 765, 771 [194 P.2d 57]. Witkin in his work on California Evidence (p. 683) notes that this type of question "seems objectionable as calling for

an *opinion* on *hypothetical facts* instead of testing the witness' knowledge of the defendant's actual reputation'' (citing *People* v. *Beltran, supra*; *People* v. *Neal, supra*). Appellant relies on *People* v. *Buchel, supra,* 141 Cal.App.2d 91, where such a question was held error on the authority of *People* v. *Neal, supra.* Although the court in *Buchel* did not cite our opinion in *People* v. *Boone, supra,* it did cite *People* v. *McKenna, supra,* 11 Cal.2d 327.

We feel bound in this case, as we did in *People* v. *Boone, supra,* 126 Cal.App.2d 746, to hold the second group of questions proper on the authority of *People* v. *McKenna, supra.* We repeat our language from *Boone* (p. 751) : ''But in *People* v. *McKenna, supra,* 11 Cal.2d 327, the appellant complained that 'the trial judge allowed the district attorney in cross-examining the defendant's character witnesses to ask them whether their opinion of her reputation for truth, honesty and integrity in the community in which she lives would be changed if they heard her character questioned because of certain acts done or statements made by her' (p. 335) and the reviewing court held that the trial court 'properly allowed the questions asked by the district attorney' (p. 336).

''The *McKenna* case, a decision of the Supreme Court, is of course, controlling.''

Even if we were to consider the asking of the above questions to be error, we find nothing in the record to show it to be prejudicial.

Defendant has complained of the third group of questions, directed, over his objections, to two of his character witnesses who had been playground directors. These questions asked whether the witness while a playground director, had himself given beer or whiskey to boys with whom he worked, or permitted such boys to perform acts of exposure or other acts similar to those charged against appellant. Both witnesses answered the questions negatively. Therefore, we fail to see how appellant was prejudiced even if the questions were improper, or how it is reasonably probable, in the light of the overwhelming evidence of appellant's guilt, that a different result would have been reached by the jury had such questions not been asked. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

*Evidence of prior similar misconduct.*

The prosecution, as part of its case in chief, called a boy 14 years of age, not one of the prosecuting witnesses, who

testified, over defendant's repeated objections, that, together with the defendant and six other boys, he had stayed overnight at the defendant's cabin on one occasion about three years before the trial and that the defendant had committed similar acts of misconduct. The witness testified that the boys were driven to the cabin by the defendant, having left from the same playground; that some of the boys drank beer; that games of strip poker were played, during which the pants and underpants of the players were removed; that a game was played, similar to that described by the prosecuting witnesses which required the loser to sit on a table and have ice cubes placed on his private parts by the defendant.

Appellant contends that the admission into evidence of the foregoing testimony constitutes prejudicial error.

The general rule is that a defendant can be tried only for the offense charged and that evidence of the commission by him of other independent offenses is not admissible because its probative value is outweighed by its prejudicial effect. (*People* v. *Westek*, 31 Cal.2d 469, 476 [190 P.2d 9] ; *People* v. *Cassandras*, 83 Cal.App.2d 272, 279 [188 P.2d 546] ; 22A C.J.S., Criminal Law, § 682, p. 729 ; 18 Cal.Jur.2d, Evidence, § 136, p. 583 ; 1 Wigmore on Evidence (3d ed.) § 193, p. 642.) The above rule, however, is subject to exceptions grounded upon principles of relevancy. ▮▮ As Mr. Justice Traynor stated in *People* v. *Peete*, 28 Cal.2d 306, 314-315 [169 P.2d 924] : ''It is settled in this state, however, that except when it shows merely criminal disposition (*People* v. *Cook*, 148 Cal. 334, 340 [83 P. 43] ; *People* v. *Glass*, 158 Cal. 650, 658 [112 P. 281] ), evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: . . . does it tend logically, naturally, and by reasonable inference, to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' (*People* v. *Sanders*, 114 Cal. 216, 230 [46 P. 153] . . .)'' (See cases and authorities collected in *People* v. *Peete, supra*, p. 315; and see *People* v. *Sykes*, 44 Cal.2d 166, 170 [280 P.2d 769].)

▮▮ It is a well settled exception to the general rule stated above that evidence of other offenses is ordinarily admissible to show criminal intent, guilty knowledge, motive, or

a common plan or scheme, regardless of the prejudicial effect thereof. (*People* v. *Westek, supra,* 31 Cal.2d 469; *People* v. *Sykes, supra,* 44 Cal.2d 166; *People* v. *Peete, supra,* 28 Cal.2d 306; *People* v. *Morani,* 196 Cal. 154, 158 [236 P. 135]; *People* v. *Cassandras, supra,* 83 Cal.App.2d 272; 22A C.J.S., Criminal Law, § 682, p. 729; 18 Cal.Jur.2d, Evidence, § 138, p. 588; Witkin, California Evidence, pp. 160-161.)

In support of his statement that the admission of the foregoing evidence was prejudicial error, defendant relies upon *People* v. *Buchel, supra,* 141 Cal.App.2d 91; *People* v. *Huston,* 45 Cal.App.2d 596 [114 P.2d 607], and *People* v. *Asavis,* 22 Cal.App.2d 492 [71 P.2d 307]. Defendant's argument is that in prosecutions for violations of section 288 of the Penal Code, the admission of evidence of similar acts, engaged in by a defendant with a person other than the prosecuting witness, is prejudicial error. Thus defendant holds to the proposition that such evidence, despite its relevancy, must fall within the general rule rather than the exception which we have stated above. We consider defendant's three cases, all of which involve prosecutions under section 288.

*People* v. *Asavis, supra,* 22 Cal.App.2d 492, was a nonjury trial. During its case in chief, the prosecution introduced the testimony of an 11-year-old girl which was in substance that, on a visit to the defendant's house, she had sat on his lap and that parts of his body, including his private parts, were exposed. The opinion is not completely clear as to whether or not this girl was the prosecuting witness. On cross-examination, the defendant was asked about an asserted impropriety with a third child. In rebuttal, the prosecution introduced testimony of the third girl to the effect that, on a visit to the defendant's house, three or four years before, he had made her touch his private parts. The court held that the admission of the testimony of the third girl was prejudicial error, since it appeared from the record that it "carried great weight with the trial judge." (22 Cal.App.2d at p. 498.) However, it is apparent from the general tenor of the opinion that the court recognized that evidence of other crimes is admissible in some instances under the exception stated herein, but considered that the exception was not applicable. In this connection, it was stated that "[n]o issue of 'innocent intent' was involved." (22 Cal.App.2d at p. 495.)

In *People* v. *Huston, supra,* 45 Cal.App.2d 596, the defendant was charged with kissing the private parts of the prose-

cuting witness, a 12-year-old girl. The prosecution introduced testimony of two other girls to the effect that he had engaged in a kissing game with one of them and had asked to see the panties of the other. The court held the admission of such evidence prejudicial error on the flat statement that such "law is established in California" (p. 597) and citing *People* v. *Rogers*, 26 Cal.App.2d 371, 372 [79 P.2d 404], and *People* v. *Asavis, supra*, 22 Cal.App.2d 492. The relevance of this evidence as bearing upon the issue of intent does not appear to have been considered.

In *People* v. *Buchel, supra*, 141 Cal.App.2d 91, 96 et seq., the defendant was charged under section 288 with committing certain lewd acts upon his son. In rebuttal, the prosecution introduced the testimony of defendant's two daughters, the older daughter testifying to acts in violation of section 288a of the Penal Code and the 15-year-old daughter to acts of forcible rape. The admission of this evidence was held prejudicial error, upon the authority of *People* v. *Asavis, supra*, 22 Cal.App.2d 492, and *People* v. *Huston, supra*, 45 Cal.App.2d 596, the court stating (141 Cal.App.2d at p. 98) : "While it is true that in this state the trend of decision has been to allow evidence of other crimes generally to show guilty knowledge, motive, intent or a common scheme or plan (8 Cal.Jur. 61), it is also true that in cases involving lewdness, the rule that evidence of other crimes is not admissible has not been relaxed."

*Buchel*, therefore, appears to us to declare in effect that evidence of other offenses is never admissible in cases involving lewdness, despite its relevance to show intent, motive and other elements within the well-defined exception.

Defendant's authorities do not persuade us that a special rule of evidence obtains for cases involving lewdness, thereby narrowing the exception we have heretofore stated and discarding sound principles of relevancy. Our own research has disclosed no California cases supporting *Buchel* in its flat nonrecognition of the possible relevance of evidence of other offenses. As we have pointed out, even *Asavis* and *Huston* do not hold this extreme position.

An examination of the authorities leaves us with the undisturbed conviction that, in California, the rule permitting the admission in evidence of other offenses to show criminal intent, guilty knowledge, motive or a common plan or scheme has no special exception for cases involving lewdness, or indeed for sex crimes generally. In cases involving

sex crimes as in other cases, the offered evidence must meet the test of relevancy. If it does, it is not excluded because it reveals the commission of an offense other than that charged (*People* v. *Peete, supra,* 28 Cal.2d 306) or has a prejudicial effect (*People* v. *Westek, supra,* 31 Cal.2d 469). In prosecutions for rape, evidence of a prior rape, committed by the defendant on another woman has been held admissible on the ground that it showed a common plan or scheme (*People* v. *Cassandras, supra,* 83 Cal.App.2d 272), and "a peculiar or characteristic behavior pattern." (*People* v. *Crisafi,* 187 Cal. App.2d 700, 707 [10 Cal.Rptr. 155].) We see no basic difference between prosecutions for sex perversion and other sex crimes, including rape. Evidence of other offenses, introduced in the latter type of case, would seem to us to be just as prejudicial in its effect as in the former. The defendant's protection in both types of cases would seem to us to be not in the abrogation of the principles of relevancy in sex perversion cases (*People* v. *Buchel, supra,* 141 Cal.App.2d 91) but in the application of such principles with care and proper safeguards. (*People* v. *Peete, supra,* 28 Cal.2d 306, 316; *People* v. *Malone,* 173 Cal.App.2d 234, 244 [343 P.2d 333].) We think that the above exception permitting introduction of such evidence remains intact for sex perversion prosecutions as well as for ordinary crimes generally.

The evidence complained of is admissible under the foregoing exception. The defendant by his plea of not guilty put in issue every material allegation of the accusatory pleadings and thus raised the issue of the defendant's intent. For the first three counts, such intent was the specific intent required by the pertinent statute. The above evidence was relevant to the issue of intent, and by showing similar conduct of the defendant on an earlier occasion, tended to negative innocent intent (which the defendant later claimed during his own testimony) and to establish the criminal intent required by the statute involved. Moreover, viewed under another aspect—that of common plan or design—the relevance of such evidence appears even more compelling. So viewed, it shows that the defendant had a plan or scheme of taking children from his playground to his cabin, giving them intoxicating liquor to drink, and engaging in so-called games of strip poker and other games with them during which he committed lewd and lascivious acts with the intent of arousing and gratifying his own depraved desires. In both the acts charged and the earlier similar acts, there was such a concur-

rence of common features, including such bizarre details as placing ice cubes on the private parts of the boys, that the evidence of the earlier events corroborated the testimony of the complaining witnesses and had probative value in proving that the defendant probably committed the lewd and lascivious acts charged in the manner in which the complaining witnesses described them. (*People* v. *Cassandras, supra,* 83 Cal.App.2d 272; *People* v. *Crisafi, supra,* 187 Cal.App.2d 700.)

Even if it were assumed that the admission of the above evidence was error, it was certainly not prejudicial. The testimony of the five prosecuting witnesses against the defendant was overwhelming. If the evidence had been excluded, there would have been no different result in the trial. From an examination of the entire record, no miscarriage of justice has occurred.

*The exclusion of witnesses at the preliminary hearing.*

We next consider the defendant's contention that he made a motion under the provisions of section 868 of the Penal Code to exclude certain persons from the courtroom during the preliminary hearing of this matter and that its denial constituted prejudicial error and resulted in his illegal commitment.

The record shows that the following transpired on April 1, 1960, at the commencement of the preliminary hearing: "THE COURT: All right, gentlemen, are we ready of the matter of People versus James Walter Malloy? MR. VARNI: Ready for the People, your Honor. MR. MORGAN: Ready for the Defendant. Before we proceed, I would like first to make a motion that all witnesses or prospective witnesses be excluded from the courtroom. MR. VARNI: All witnesses testifying at the Preliminary Hearing will be excluded except the witness testifying. THE COURT: Very good. MR. MORGAN: Secondly, I would ask that the Court exclude from the courtroom all witnesses not having legitimate interest in the proceedings. MR. VARNI: I oppose that motion on the grounds this is a criminal proceeding. THE COURT: That motion will be granted, that will not apply to the parents of the children. MR. MORGAN: I would like to ask the record to show first, I would like the parents excluded. I am stating this motion specifically because it is my belief the parents will be allowed to hear the case, and then discuss it with their respective children. THE COURT: The motion is denied. MR. MORGAN: I would ask one further thing: That the record show at this

time what parents are present in the courtroom. MR. VARNI: I'll object to that, I don't see why there is any reason for that. This is an open hearing, it's not—— MR. MORGAN: I think I am entitled to it, I am merely asking the record to reflect what is shown in the courtroom. MR. VARNI: I am opposing the motion on the grounds it's immaterial. THE COURT: Motion denied.''

Thereafter, on April 26, 1960, the court denied defendant's motion to dismiss the information, made under the provisions of section 995 of the Penal Code, on the grounds that the defendant had not been legally committed.

Section 868 of the Penal Code as it read at the time of the preliminary hearing[4] provided: ''The magistrate must also, upon the request of the defendant, exclude from the examination every person except his clerk, court reporter and bailiff, the prosecutor and his counsel, the Attorney General, the district attorney of the county, the defendant and his counsel, and the officer having the defendant in custody . . .''

The law is clear that when a defendant properly makes a motion under section 868, failure of the magistrate to grant such request to exclude, results in an unlawful commitment of the defendant and upon proper objection, the superior court has no jurisdiction to proceed. (*People* v. *Elliot*, 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225]; *People* v. *Prizant*, 186 Cal.App.2d 542 [9 Cal.Rptr. 282].) As Mr. Justice Peters said in *Elliot* (*supra*, p. 504): ''The right afforded to a defendant by section 868 of the Penal Code, to require that all unauthorized persons be excluded from the courtroom during the preliminary examination, is a substantial safeguard which cannot be disregarded by the magistrate. The section is mandatory.''

The simple question before us is: Did the defendant make such a motion. The fact that he did not expressly designate section 868 as the section under which he was proceeding does not of necessity determine the question, if the defendant otherwise made known to the magistrate that he was invoking the section. Certainly if the magistrate, under the above cases, is to be held to a full accountability in guaranteeing to the defendant a basic safeguard of a fair trial, the defendant should make reasonably clear to the magistrate what substantial right he is asserting.

---

[4]Penal Code section 868 was amended by Stats. 1961, ch. 220, § 1, to add ''the investigating officer'' to the above persons excepted from its operation.

In the instant case, the defendant first moved that "all *witnesses* or *prospective witnesses* be excluded from the courtroom." (Emphasis added.) This motion was granted. He then asked the court to exclude "all *witnesses* not having legitimate interest in the proceedings." (Emphasis added.) This motion the court also granted with the exception that it "will not apply to the parents of the children." So far, the defendant asked only that *witnesses* be excluded. In response the defendant stated, "I would like the parents excluded," a request promptly denied. The defendant then requested that the record show "what parents are present in the courtroom," a request also promptly denied.

Certainly if defendant actually intended to exclude "every person" (with the statutory exceptions) an opportunity presented itself when the court refused to exclude the parents. At that time, if he actually so intended, he could have compelled the exclusion of the parents, by specifically informing the court that he wanted "every person" excluded or, as is sometimes stated, that he wanted the court cleared. In the absence of such clear cut statements, we think that on the record the court had no way of knowing that the defendant was invoking a right under section 868. In fact, the whole tenor of the colloquy with the court, including the use of the word "witnesses," undoubtedly indicated to the court that the defendant was requesting merely an exclusion of witnesses under section 867 of the Penal Code,[5] the granting or denial of which request was within the court's discretion.

Our conviction that the defendant did not intend to request an exclusion of "every person" is fortified by the fact that there were spectators in the courtroom, other than the parents of the prosecuting witnesses, which spectators defendant made no effort to exclude. During the cross-examination of the first witness, the magistrate asked the parents of the prosecuting witnesses to identify themselves by raising their hands and then asked other people in the courtroom to identify themselves. Three such spectators identified themselves. The record does not disclose whether they were present at the commencement of the hearing. On the other hand, it discloses no objection by defendant to their presence nor any comment by

---

[5]Penal Code section 867 provides: "While a *witness* is under examination, the magistrate may exclude all *witnesses* who have not been examined. He may also cause the *witnesses* to be kept separate, and to be prevented from conversing with each other until they are all examined." (Emphasis added.)

defendant asserting either expressly or by reasonable implication that defendant sought exclusion of every person.

Contrary to the instant case, in *People* v. *Elliot, supra,* 54 Cal.2d 498, the "appellant duly requested that the magistrate exclude *all persons* not excepted by section 868 . . ." (P. 502; emphasis added.) We, therefore, do not agree with defendant's argument that *Elliot* "presents a situation identical to the present one." The position of defendant is very similar to that of the defendant in *People* v. *Guy,* 191 Cal. App.2d 714 [13 Cal.Rptr. 17], where the defendant asked "that any witnesses be removed from the courtroom." (P. 717.) In response to the court's inquiry as to other witnesses the prosecutor responded that there were only the investigating officer and the mother.[6] Defense counsel consented to the mother's presence but made no objection to, or comment about, the investigating officer. Rejecting defendant's contention that it was reversible error under *Elliot* and *Prizant* for the magistrate to have failed to exclude the officer, the court said: "The defendant's argument presupposes that the motion he made at the preliminary hearing was under section 868 for the exclusion of all persons not expressly authorized by that section. Examination of the record, however, reveals that the defendant did not indicate that the motion he made was based upon section 868, nor did he use the language of the section that '[t]he magistrate . . . exclude . . . *every person* . . .' except those enumerated. (Emphasis added.) Rather, the defendant asked 'that *any witnesses* be removed from the courtroom.' (Emphasis added.) Clearly, then, the motion was for the exclusion of 'witnesses who have not been examined' under section 867 of the Penal Code. [Footnote omitted.] The contrast between the two sections is clear. While section 868 is mandatory, section 867 'gives the magistrate discretion to exclude and/or separate witnesses.' (*People* v. *Elliot, supra,* 54 Cal.2d at p. 504.) There was no abuse of discretion in the magistrate's failure to exclude the investigating officer because the defendant has not shown that he was prejudiced in any way by the officer's presence. (*People* v. *White,* 100 Cal.App. 2d 836, 838 [224 P.2d 868]; *People* v. *Lariscy,* 14 Cal.2d 30, 32 [92 P.2d 638].)'' (P. 718 of 191 Cal.App.2d.)

Defendant in his reply brief and at oral argument maintained that section 868 by its terms permits a request by a

[6]The hearing occurred before the effective date of the 1961 amendment to Penal Code section 868 which made the investigating officer a nonexcludable person.

defendant to exclude less than all persons in the courtroom and thus "to choose certain spectators, particularly objectionable to him." We deem it unnecessary to decide this point, since defendant claims that he sought the exclusion of all persons.

*Restriction of cross-examination of prosecuting witness at preliminary hearing.*

 The magistrate curtailed the cross-examination of the first prosecution witness. After an extensive examination by defense counsel, the witness testified on such cross-examination that the defendant had committed 10 similar acts on him. Defense counsel announced that he was "going to cover the ten times," but, at that point the magistrate curtailed the examination and excused the witness. Defendant contends that such action by the magistrate resulted in an illegal commitment and that in effect defendant's motion to dismiss the information should have been granted. We do not agree.

 If the right of cross-examination is not generally denied, a showing of probable cause will support the legality of the commitment. Under such circumstances, error in excluding testimony on cross-examination is not grounds for dismissal under section 995. (*People v. Wilson,* 183 Cal.App. 2d 149 [6 Cal.Rptr. 872].) The cross-examination of the witness in question seems ample. In places, it produced its desired object of emphasizing the vagueness of some of the witness' statements. The length and scope of the cross-examination was within the discretion of the magistrate. An examination of the testimony of the prosecuting witness shows no abuse of discretion. Defendant relies on *People v. Ormes,* 88 Cal.App.2d 353 [198 P.2d 690]. We fail to see how the disposition of the question of curtailment of cross-examination of a prosecution witness in a trial before a jury upon the state of the record in *Ormes* is determinative of such question upon the state of the record at a preliminary hearing.

In his closing brief, defendant argues that the curtailment of the above cross-examination of the witness during the preliminary examination placed defendant in a prejudicial situation when confronted with the same witness at trial, since he had been denied the right to acquire the means of rebutting such testimony. Defendant's argument ignores the fact that while the preliminary hearing is frequently a useful source of information for the defendant, its legal purpose and function is to determine if reasonable and probable cause exists for holding the defendant to answer. Any opportunities available

to the defendant at the preliminary hearing to obtain information are of course subject to the reasonable control of the hearing by its magistrate (Code Civ. Proc., § 2044) in the proper exercise of his discretion.

The judgment and order are affirmed.

Bray, P. J., and Tobriner, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1962.