[Crim. No. 8287. Second Dist., Div. Four. Dec. 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LeROY JOHNSON TWIGGS, Defendant and Appellant.

David Cunningham, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David M. Rothman, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—By information, defendant was charged in three counts with attempted grand theft from the persons of three John Does on or about November 24, 1961. The information also alleged two prior felony convictions, attempted grand theft from the person and grand theft. Defendant pleaded not guilty and denied the prior convictions. Later, however, out of the presence of the jury, defendant admitted the priors to be true. The jury returned verdicts of guilty on all counts. Probation was denied and defendant

was sentenced to state prison for the term prescribed by law. Defendant, although represented by counsel at the trial, originally appeared herein in propria persona and filed an opening and a supplemental brief. Thereafter at his request, counsel was appointed to represent him. Appointed counsel appeared at the hearing of this appeal, advised the court he had reviewed the file and was unable to raise any points not raised in the briefs filed by defendant, and electing to stand on those briefs, presented oral arguments in support of the contentions hereinafter discussed.

A summary of the evidence is as follows: Oscar O'Lear of the Los Angeles Police Department was employed during his "off hours" as a security officer for J. J. Newberry department store, located at Fifth and Broadway in Los Angeles. On November 24, 1961, O'Lear observed defendant in the department store. When defendant left the store O'Lear followed him. Defendant walked to a nearby bus stop on Fifth Street, and approached a group of people as they were boarding a bus. O'Lear observed defendant push against a woman passenger, reach over with his left hand, and take hold of the clasp of her purse. At that instant the woman turned and boarded the bus. Defendant then moved to his right, standing next to a man in the group, and lifting up the man's coat, put his hand part way into the man's left rear pocket. Defendant's hand remained in the man's pocket for a fraction of a second and was removed. O'Lear could not see anything in defendant's hand when he withdrew it from the man's pocket. Defendant then moved over to another male in the group, performing the identical motions as he had with the first man. O'Lear could not see anything in defendant's hand as it was removed from the man's pocket. The man boarded the bus and defendant followed him and engaged the conductor in conversation. However, defendant got off the bus before it pulled away from the bus stop, walked to the corner of Fifth and Broadway, and stood near the curb behind several persons waiting on the corner. As a streetcar approached, defendant walked over to a loading zone, pushed up against a man standing there, lifted his coat, and put his hand into the man's left rear pocket. At this point, several persons boarding the streetcar obstructed O'Lear's view and he could not see defendant's hand withdrawn from the man's pocket. Defendant waited in the passenger loading zone and boarded the next streetcar. O'Lear followed, keeping defendant under observation. He

saw defendant place folded money in his left shirt pocket. Defendant alighted from the streetcar at Eighth and Broadway. O'Lear got off with defendant and placed him under arrest.

Defendant was taken to the security office of Newberry's and there searched. His wallet, which was taken from his left coat pocket, did not contain any currency. However, eight $5.00 bills and one $100 bill were found in his left shirt pocket, and twenty-one $1.00 bills were found in his right front trouser pocket.

Defendant testified at the trial in his own behalf as follows: He denied he had been in Newberry's on November 24 or in the vicinity of Fifth and Broadway. He also denied that he had attempted to put his hand into anyone's pocket. He was employed by a laundry at a salary of $50 a week and was paid on the day of his arrest. The money found in his pocket was the result of his savings. He acquired the $100 found in his possession earlier in the day from a savings and loan association, intending to send it to his grandmother for a Christmas present. He always kept his money loose in his pocket and never put it in his wallet.

■ Defendant contends that the information charging him with attempted grand theft was defective in that it did not allege how much money he attempted to steal, and that the proof was insufficient in that it did not disclose the amount involved. These contentions are wholly without merit. The corpus delicti of the offenses charged was clearly established. To establish the corpus delicti of attempted grand theft from the person, there must be: (1) a person from whom the property may be taken; (2) an intent to take such property against the will of the owner; and (3) an act performed tending to accomplish the foregoing. The amount of money involved, if any, is an extraneous fact which need neither be alleged nor proved. Unlike subdivision 1 of section 487 of the Penal Code (which fixes a monetary value for the types of theft therein involved), subdivision 2 of that section, which is the provision herein involved, makes any taking "from the person of another" grand, and not petty, theft. The facts in the case at bar are strikingly similar to those in *People* v. *Fiegelman*, 33 Cal.App.2d 100 [91 P.2d 156]. In that case, the victim was standing in a crowd watching a parade. One of the two defendants charged with attempted grand theft was apprehended in the act of inserting his fingers into the rear trouser pocket of the victim. No money was

found in the pocket. Convicted of attempted grand theft, defendants contended on appeal that since the evidence established there was no money in the victim's rear trouser pocket, they could not logically be convicted of an attempt to steal that which is not there to be stolen. The court rejecting this contention, stated (at p. 105): "It is the condition of appellants' minds and their conduct in the attempted consummation of their design which determines whether there was an actual attempt to commit the crime. Here appellants did their utmost to effect the consummation of the crime intended by them. They failed only by reason of a cause or causes not previously apparent to them."

Defendant contends that he was deprived of his constitutional right to confront his accusers (U.S. Const., 6th Amend.), in that the would-be victims were not called to testify against him. He also contends the information was defective for failure to plead the exact names of the victims. Defendant was so confronted. The law does not require that a conviction may be had only on the testimony of the immediate victims who are often dead, absent from the jurisdiction, or unknown to the police. In this case, Officer O'Lear, a percipient witness, testified fully as to the circumstances observed by him. The jury obviously believed him and not defendant. The evidence presented was amply sufficient to support its determination.

Defendant contends that the evidence was insufficient to support the verdict and judgment in that there was lacking a vital element in the corpus delicti of the crime of grand theft, namely, a showing that he had a specific wrongful intent to commit the crime. We disagree. In the instant case, viewing the facts in a light most favorable to the People, (as we are required to do where the contention on appeal is that the evidence is insufficient to support the judgment), we reach but one conclusion, which is, that the defendant intended to pick the pockets of his would-be victims. His intent or purpose was unmistakable from his conduct as described by the officer.

Defendant contends that the judgment is "void for uncertainty," because the evidence presented by the People, if believed, shows four offenses while the information and the ultimate conviction related to only three offenses. This argument is completely without merit. It is clear from the information, the crimes charged were crimes against three men since there were three counts for crimes against "John

Doe." The district attorney would have named the first intended victim as "Jane Doe" if he intended to charge a crime against a female. Furthermore, the deputy district attorney made it clear to the jury in his closing argument that the three crimes defendant was charged with were the acts against the three men, and that the act relating to the woman was not to be considered as one of the offenses. The evidence of defendant's act in touching the clasp of the woman's purse was properly admitted as evidence tending to show defendant's intent as it related to the acts allegedly directed against the John Does. (*People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7].)

▇ Defendant contends the deputy district attorney was guilty of prejudicial misconduct. He cites, as the first alleged misconduct, the testimony elicited by the deputy district attorney from officer O'Lear which relates to the quantity of money found on defendant's person when he was arrested and searched, and the fact that the money was found loose in various of defendant's pockets. Although the money was not put in evidence nor was any attempt made by the People to show that it belonged to someone else, evidence of its presence on defendant's person, and particularly its location on his person, was relevant as tending to show he was engaged in pickpocket activities. "Possession of currency of denominations not commonly carried may afford a basis for inference as to the source of the money. [Citation.] ... we suggest that a jury is at least as competent as the judiciary to determine the circulation frequency of 100 [*sic*] bills. The evidence was admissible [citation], as a basis for such inference as the jury might reasonably draw." (*People* v. *Brumback,* 152 Cal.App.2d 386, 392-393 [314 P.2d 98].)

▇ Defendant further complains of misconduct by the deputy district attorney in his reference to the crime of attempted murder in his argument to the jury. From a reading of the deputy district attorney's argument it is readily apparent the reference was merely used as an example to explain to the jury the meaning of the crime of attempt. The jury was emphatically told that this example was not taken from the facts of the case. It is inconceivable that the jury could have believed that the deputy's argument was intended to compare defendant's actions as a pickpocket to those of an attempted murderer, as defendant contends.

▇ Defendant also complains of the deputy district attorney's closing argument, and especially in his reference to

the public defender as "defender of the down-trodden." The remarks were directed at the public defender, and do not appear to be disrespectful when taken in context. All of the remarks about which defendant complains were an insignificant part of the argument and in our opinion had no effect upon the results of the trial. Facetious remarks, when taken in their context are held to be at most " ... a smile-provoking description of no consequence." (*People* v. *Moore*, 196 Cal. App.2d 91, 102-103 [16 Cal.Rptr. 294].) Furthermore, the court included in his instructions an admonition to the jury that any statements made by counsel concerning the facts of the case must not be regarded as evidence.

Defendant further contends that his defense counsel (public defender) was incompetent, and therefore, that he did not have an adequate defense. ▋ Defendant argues in particular:

(a) That the public defender did not make enough objections during the course of the trial. We know of no requirements in the law that an attorney's competence is to be measured by the number of objections he makes.

▋ (b) That the public defender erred in not indicating to the court that defendant was not arraigned within two days after his arrest. There is nothing in the record to indicate that defendant was not brought before a magistrate within two days, or that the elements of Penal Code section 825 were not met.

▋ (c) That the public defender was negligent in failing to point out that Officer O'Lear, the People's only witness, was holding a second job at a time when he was a member of the Los Angeles Police Department and at the time of defendant's arrest. Such evidence would have been totally irrelevant to the issues of the case.

▋ (d) That "the public defender was negligent in allowing defendant to be sentenced in the manner he was." Defendant's sentence as to counts one, two and three were ordered to run concurrently with each other and concurrently with any unexpired parole time. We can find no imaginable ground for complaint here; the other alternative was for the court to order the sentences to run consecutively.

▋ (e) That the public defender was negligent in not requiring the clerk of the trial court to read defendant's plea to the jury. The record on appeal shows that both counsel waived a reading of the information. Since the reading of the accusation was waived a reading of the plea would also nec-

essarily be waived. ▇▇▇ Furthermore, the failure to read the accusatory pleading and plea of defendant would not constitute a fatal error even without a waiver when it appears from the record of the jury impanelment, as it does in this case, that the jury must have been aware of the accusation and defendant's plea thereto. (*People* v. *Sprague*, 53 Cal. 491, 494.)

A review of the record on appeal convinces us that defendant was adequately represented by counsel. ▇▇▇ "Before it can be held that an accused's representation by counsel was inadequate to the degree that it violated his right to representation under the Fourteenth Amendment to the Constitution of the United States, an extreme case must be disclosed. The representation must be of such a low order as to render the trial a farce and mockery of justice [citation], or it must be shown that the essential integrity of the proceeding as a trial was destroyed by the incompetency of counsel [citation]." (*People* v. *Dupree*, 156 Cal.App.2d 60, 69 [319 P.2d 39]; see also, *People* v. *Prado*, 190 Cal.App.2d 374, 377 [12 Cal.Rptr. 141].)

▇▇▇ "This court can take judicial notice. ... that it would be difficult to find in California any lawyers more experienced or better qualified in defending criminal cases than the Public Defender of Los Angeles County and his staff." (*People* v. *Adamson*, 34 Cal.2d 320, 333 [210 P.2d 13]; *People* v. *Hughes*, 57 Cal.2d 89, 99 [17 Cal.Rptr. 617, 367 P.2d 33].)

▇▇▇ Defendant contends the trial court committed prejudicial error in its instructions to the jury. He complains of four specific instructions given by the court: (1) CALJIC[1] No. 24 (Direct and Circumstantial Evidence Equally Entitled to Consideration.) This was a proper instruction as given; (2) CALJIC No. 72-B (Concerning Specific Intent.) Defendant argues the court inserted in this instruction the words "grand theft from the person" and failed to include the word "attempted." There is no merit in this argument. The intent to commit the crime of "attempted" grand theft from the person is basically the same intent required to commit the substantive crime of grand theft from the person. After the instructions on grand theft the court then gave the instruction CALJIC No. 101, which is a definition of "attempt to commit crime." ▇▇▇ (3) Defendant complains that instruction CALJIC No. 233-C, (When Property is Tak-

[1]California Jury Instructions Criminal.

en from the Person) should not have been given since the evidence failed to show any money or property was actually taken from the person of the victims. This instruction was given to indicate that there is no requirement in the law that a certain sum of money be taken to constitute grand theft from the person. ▮▮▮ (4) Defendant complains that CALJIC No. 102 (Abandonment of Attempt) was erroneous for the reason that a person cannot abandon the crime of "attempt." This instruction was given to explain to the jury that, once an accused has committed sufficient acts to constitute an attempt, he has committed the crime of attempt, and that he cannot avoid responsibility for the attempt by abandoning his purpose to commit the substantive crime.

We have reviewed all of the instructions both given and refused and conclude that the jury was properly and adequately instructed as to the applicable law in the case and that the evidence was sufficient to sustain the verdicts herein.

We have reviewed other contentions raised by defendant and find them to be wholly without merit and not warranting further discussion.

The judgment of conviction is affirmed.

Burke, P. J. and Kingsley, J., concurred.