403 P.2d 921

**STATE of Arizona, Appellee,**

v.

**William DeVINNEY, Appellant.**

No. 1444.

Supreme Court of Arizona,

In Division.

July 16, 1965.
Rehearing Denied Sept. 21, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, Former Atty. Gen., Stirley Newell, Former Asst. Atty. Gen., for appellee.

Anne Kappes, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

Appellant was convicted in the Superior Court of Maricopa County of drawing a check on an insufficient account with the intent to defraud, in violation of A.R.S. § 13–316, as amended. This statute provides, in pertinent part, as follows:

"A. A person who, for himself or for another, wilfully with intent to

defraud, makes, draws, utters or delivers to another person or persons a check or checks or draft or drafts on a bank or depositary for payment of money, knowing at the time of such making, drawing, uttering or delivery, that he or his principal does not have an account or does not have sufficient funds in, *or credit with,* such bank or depositary to meet the check or checks or draft or drafts in full upon presentation, shall be punished as follows:

\* \* \* \* \* \*

"B. The word 'credit' as used in this section shall be construed to be an arrangement or understanding with the bank or depositary for payment of the check or draft." (Emphasis supplied.)

Appellant's primary contention on appeal is that the trial court erred in denying his motion for a directed verdict on the grounds that as a matter of law he had credit with the drawee bank and therefore could not be convicted under the above statute. The State points out that this was not urged in support of his motion for a directed verdict at trial and it cannot now be raised for the first time on appeal, citing State v. Loftis, 89 Ariz. 403, 363 P.2d 585, and State v. Evans, 88 Ariz. 364, 356 P.2d 1106, in support thereof.

The record indicates that at the close of the State's evidence appellant moved for a directed verdict for the reason the evidence failed to show the alleged crimes took place in Maricopa County or that the checks were returned for insufficient funds. At the end of all the evidence appellant renewed his motion on the same grounds, and, in addition, for the reason that the undisputed evidence showed the existence of a credit arrangement. We, therefore, pass to a consideration of appellant's contention on the merits.

Appellant opened his account with Guaranty Bank on June 20, 1962, with a deposit of $300. From then until July 10, 1962, he made six additional deposits totaling in all, $1,656.50. Four of the deposits were made with checks either payable or endorsed to him subsequently returned unpaid to the Guaranty Bank. They totaled $896.50. As each check was returned, appellant's account was debited of which he was advised by the customary bank notice, the last notice being about July 17, 1962, at a time when his account was overdrawn $436.31.

Appellant was tried on two informations charging him with drawing three worthless checks; one each on June 26, September 20 and October 22, 1962. He was acquitted of the first two but convicted on the last—a check in the amount of $123.54. It is to be noted that he was arrested October 9, 1962, on the first two charges and thirteen days later drew the October 22 check on the same account. He was then facing trial for having drawn two insufficient

checks on the same account. No deposits were made in the interim. However, he testified at his trial that the day after his arrest he talked to a Mr. Janett of the Guaranty Bank and Mr. Janett told him the bank would attempt collection of the checks and if successful would credit his account. Appellant also testified that he asked for the checks so he could collect them himself, but the bank refused to give up possession of them. This was corroborated by the data processing supervisor of the bank who testified regarding the procedure followed by the bank. He stated that when a check deposited by a customer is returned unpaid, the customer's account is debited and if the account is thereby overdrawn, the bank retains possession of the check and attempts to collect it. It is this retention of possession which appellant maintains created a debtor-creditor relationship between himself and the bank.

■■■ The general rule is that a bank has a right to charge a dishonored check or draft back against the depositor, both where the bank becomes the owner and where the deposit is made for collection only. The right to charge back may be expressly preserved by the terms of the deposit slip, or, in the absence of a literal agreement, the law may imply the right of the bank to charge back. 9 C.J.S. Banks and Banking § 284, p. 591.

It was stated in Adams County v. Meadows Valley Bank, 47 Idaho 646, 653, 277 P. 575, 577:

"When paper is deposited in a bank under such conditions as to make the bank the owner of such paper, the right exists on the part of the bank to charge back to the account of the depositor items found to be uncollectible. The credit is considered [to be] conditional only, and the right to charge back has been generally, if not universally, recognized wherever it has been asserted."

■■■ In Arizona we have accepted the general rule that checks deposited in a bank where credited to an account become the property of the bank, and the bank becomes liable to the depositor for the amount of the check as of the date of credit. However, this general rule will yield to the intention of the parties as reflected in the transaction. Davies and Vincent v. Bank of Commerce, 27 Ariz. 276, 281, 232 P. 880. In other words, checks deposited for credit, and not merely for collection, become the property of the bank and the relation between bank and depositor is that of debtor and creditor. In the absence of any special agreement between depositor and bank, where checks are endorsed and deposited and are accepted as cash they become the property of the bank,

and the bank becomes a debtor of the depositor in the amount thereof, even though it is understood that the bank has the right to charge back the amount if the paper proves uncollectable. 9 C.J.S. Banks and Banking § 281a, pp. 583–584.

▬ Regardless of whether a creditor-debtor relationship was created between the bank and appellant by the deposit of the four checks in appellant's account, he was aware that the bank was not extending credit to him to cover the check he wrote on October 22, 1962. When appellant conferred with Mr. Janett of the Guaranty Bank, he was advised that his account was overdrawn and when the checks were collected his account would be credited to that extent minus bank charges. Appellant acknowledged that he was never informed that the checks he had deposited were ever collected. Under these circumstances, there was ample evidence from which the jury could find that no credit arrangement or understanding to meet the check of October 22, 1962, existed between appellant and the bank.

▬ But appellant urges that nevertheless, as a matter of law, the bank extended credit to him by its failure to return the dishonored checks. The facts show that when the first two checks were returned to the Guaranty Bank and appellant's account was debited to that extent it still showed a plus balance. It is appellant's position that he was entitled to possession of the checks so as to enable him to collect from the drawers. A.R.S. § 44–474.[1] If the refusal of the bank to return the checks resulted in a financial loss to appellant, he might have a civil cause of action to regain possession or for damages against the bank, but we fail to see how this could create a valid defense to this criminal charge. See 6 Michie Banks & Banking, Ch. 10, § 63 and § 100.

▬ The statute, § 13–316, supra, defines "credit" as "an arrangement or understanding * * * for payment of the check." This does not mean a possible legal liability predicated on other than an arrangement or understanding for payment of appellant's checks. Nothing in this record indicates that the bank ever permitted appellant to overdraw his account, as was the case in State v. Thompson, 37 N.M. 229, 20 P.2d 1030, cited by appellant.

▬ Appellant urges that the State failed to prove that there was no credit arrangement or understanding to pay his checks but the evidence is to the contrary. He was examined as to a conversation with an officer of the bank sometime between

---

1. A.R.S. § 44–474 provides:
   "The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

the 10th and 12th of October, 1962. At that time appellant asked why his checks had been returned. He testified:

"A  I asked him why my checks had been returned and as a result caused me to be arrested, and he said the checks that I had deposited had come back and created an overdraft on my account.

\*   \*   \*   \*   \*   \*

"A  I asked him why the bank had refused them, and he said that the —the checks that I had deposited had come back; and I asked him if they had redeposited them, and he said that they were attempting to.

"I asked him what was to be done about it, and he said that he wanted me to come in and pay for them. I said, 'Well, then, I will get the checks and I can get the parties that gave them to me.'

"He said, 'No,' he said, 'You collect them and we will deposit to your account after our charges are out.'

\*   \*   \*   \*   \*   \*

"A  He advised me that the banks would collect on the account. Because my account was overdrawn, that they would collect on the checks, and they would deposit, other than the charge for checks, that they would deposit the balance to my account."

The foregoing is sufficient for the jury to conclude that appellant knew the bank was not extending him credit on his overdrafts.

There is also urged as error the introduction of evidence that appellant wrote two other insufficient-funds checks on the same account nearly two months after the date of the offense for which he was convicted. Similar evidence was held admissible by this Court in State v. Daymus, 90 Ariz. 294, 367 P.2d 647, wherein we pointed out that such evidence tended to establish an essential element of the offense charged. In Arizona the law is well settled that evidence of other crimes is competent when it tends to establish motive, intent, absence of mistake or accident, identity and common scheme or plan. Id. at 298. See also Crowell v. State, 15 Ariz. 66, 136 P. 279; Lewis v. State, 32 Ariz. 182, 256 P. 1048.

For the foregoing reasons, the judgment of the trial court is affirmed.

LOCKWOOD, C. J., and McFARLAND, J., concurring.