437 P.2d 952

The STATE of Arizona, Appellee,

v.

Jesus Flores HERNANDEZ, Appellant.

No. 2 CA–CR 84.

Court of Appeals of Arizona.

Feb. 27, 1968.

Rehearing Denied April 1, 1968.

Review Denied May 23, 1968.

Darrell F. Smith, Atty. Gen., Carl Waag, Asst. Atty. Gen., William J. Schafer, III, County Attorney, Pima County, Tucson, for appellee.

O. G. Marquez, Tucson, for appellant.

MOLLOY, Judge.

This appeal questions the admission of evidence pertaining to a similar offense, the failure of the court to instruct the jury on the limited purpose of the testimony of the similar offense, and the overall sufficiency of the evidence to warrant a conviction of grand theft.

The facts are as follows. On March 9, 1966, at approximately 7 p. m., defendant drove a 1957 Dodge automobile into the Thunderbird Service Station located at 1850 East 36th Street, in the City of Tucson. He stopped his automobile alongside the gas pumps. The service station attendant came out to the car and noticed a damaged right rear fender. Upon the defendant's request, he opened the hood of the car and checked the transmission. While so doing, the attendant was in such position that he could not view the glassed-in office where the cash register was kept. A check of the transmission for a few minutes revealed nothing amiss, and defendant then drove out of the station, south on Campbell Avenue, without ever having gotten out of the car. As the defendant's car was pulling out, a new customer was driving in, and the attendant sold gasoline to this customer. When he walked back to the office to deposit the money he received from this sale,

he found the cash register, which had been in the office prior to defendant's entering the station, gone.

That same evening, at approximately 7:30 p. m., a Mrs. Smith, who lived in a relatively sparsely settled, desert area, one-half mile from the gas station, drove into the private road leading to her house. She saw a car parked near her house. As she drove in, the car drove away. The following morning, Mr. Smith found a cash register beside the road leading to the Smith home. He recognized it as being that of the Thunderbird station where the Smiths were customers and he returned it to the service station.

On the same morning, officers of the Tucson Police Department, Detective Division, drove to the Smith residence and began searching for additional evidence. They found an automobile hubcap and some tire tracks in the area. They then drove to the residence of one Arthur Valenzuela and there examined a 1957 Dodge belonging to Valenzuela. They noticed a hubcap missing from the right rear wheel of the vehicle and also noticed the right rear fender was damaged. Pictures were taken of the vehicle, including the tire tread design of the car's tires. The vehicle was identified by the service station attendant as being the car driven by the defendant on the evening in question. It was shown at trial that the tread design of the tires matched those found in the tracks beside the road on the Smith property and that the hubcap found beside the Smith road fit the wheel of Valenzuela's car which was missing a hubcap. A black plastic chip, approximately $1\frac{1}{4}$ inches by $\frac{3}{4}$'s of an inch by $\frac{1}{8}$th inch in size, was found on the rear floorboard of the Dodge automobile. This chip fitted "perfectly" [1] a broken-out piece of the cash register drawer.

Without objection from the defendant, one Frank Plummer, operator of another south-side gas station, testified that on February 3, 1966, some 34 days prior to the in-

---

1. Quote from testimony of Detective Frank Muhl, R.T. at 59.

cident in question, the defendant drove into his gas station in this same 1957 Dodge automobile and asked to have his oil checked. While Plummer was servicing this car, some person ran into Plummer's gas station office and stole $187 from the cash register.

The defendant did not testify in defense, but put on an alibi witness who somewhat tentatively testified that he had been drinking beer with defendant between 6 and 8 or 8:30 p. m., on what he thought was probably March 9, 1966.

Defendant's first contention is that it was error for the court to deny granting of a mistrial after the evidence of the prior bad incident at Plummer's gas station was adduced.

■ Our Supreme Court has been meticulous in reversing cases in which evidence of other criminal offenses has been admitted erroneously. See, e. g., State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967); State v. Gallagher, 97 Ariz. 1, 396 P.2d 241 (1964); State v. Gortarez, 96 Ariz. 206, 393 P.2d 670 (1964); State v. Jacobs, 94 Ariz. 211, 382 P.2d 683 (1963); and State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120 (1960). All of these decisions rest on a common foundation—that evidence of other offenses is prejudicial and unless such evidence has direct probative value in the case being tried, the evidence must be excluded.

And yet, it has been recognized time and again by our Supreme Court that there are occasions when conduct of the defendant at other times than during the commission of the crime with which he is charged has direct probative value, and, when such is the case, the admission of such evidence is proper even though such conduct might be criminal in nature. State v. Hardin, 99 Ariz. 56, 406 P.2d 406 (1965); State v. De-Vinney, 98 Ariz. 273, 403 P.2d 921 (1965); State v. Akins, 94 Ariz. 263, 383 P.2d 180 (1963); and State v. Daymus, 90 Ariz. 294, 298–299, 367 P.2d 647, 650 (1961).

■ We believe the fundamental test laid down by our Supreme Court is that of relevancy. The question in each case is whether the proffered evidence has a direct probative bearing upon an issue on trial. As stated by Wigmore:

"It has already been noted (ante, § 216) that the criminality of prior acts thus offered does not affect their admissibility. Either they are relevant, by the above tests, or they are not; if they are not, they are rejected because they are irrelevant; if they are, they are received in spite of their criminality. The only bearing of the latter quality is that, if they are irrelevant, it furnishes another reason for excluding them, namely, the reason of Undue Prejudice, as enforced in the Character rule (ante, § 194); for these other criminal acts would not merely be irrelevant, but would go to evidence the defendant's character and career as bad and thus to create undue prejudice, —a mode of argument against him that is forbidden by a fundamental principle." 2 Wigmore, Evidence § 305, at 205 (3d ed. 1940).

Accord, Udall, Arizona Law of Evidence § 115, at 228–29 (1960), and see People v. Peete, 28 Cal.2d 306, 169 P.2d 924 (1946), cert. denied 331 U.S. 783, 67 S.Ct. 1185, 91 L.Ed. 1815 (1947).

■ As we view the evidence pertaining to the incident at Mr. Plummer's service station, we believe it has some bearing upon the defendant's intent on the occasion upon which he is here charged with crime. Proof of mental state is always difficult and almost invariably proof on this subject must be circumstantial in nature. 29 Am.Jur.2d Evidence § 355, at 404–05. Taking the State's proof at its fullest value, as we are required to do on appeal, State v. Valenzuela, 101 Ariz. 230, 418 P.2d 386 (1966), the defendant's presence at the service station at the time of this theft is well established by an eyewitness identification. Equally well established is the fact the defendant's conduct, wittingly or unwittingly, assisted some unknown person in this theft. The physical circumstances surrounding the taking of this cash register in-

dicate that the theft could not have been accomplished as it was unless the attendant's attention were diverted in one manner or another. The cash register was sitting in a glassed-in office, well lighted, and it could only be when the attendant was busy with other matters that one could surreptitiously enter the office and leave with the entire cash register.

In determining whether the defendant's conduct on this occasion was witting or unwitting, it is our view that the incident at the other service station is of some assistance to reasonable men in reaching a conclusion. That the one "assist" may have been accidental would be a likely possibility, but that two such instances were coincidental is substantially less likely. The following quotation is pertinent:

> "Another class of cases consists of those in which it becomes necessary to show that the act for which the prisoner was indicted was not accidental, —e. g., where the prisoner had shot the same person twice within a short time, or where the same person had fired a rick of grain twice, or where several deaths by poison had taken place in the same family, or where children of the same mother had mysteriously died. In such cases it might well happen that a man should shoot another accidentally, but that he should do it twice within a short time would be very unlikely." State v. Lapage, 57 N.H. 245, 294 (1876).

And see 2 Wigmore, Evidence § 302, at 196–97 (3d ed. 1940).

Here there are striking similarities between these two incidents. Not only was the same basic method used in accomplishing the theft, but the same car, which was not the property of the defendant, was driven by the defendant on both occasions.

This car is tied in to the second theft by a chain of physical facts which can only be reasonably explained on the theory that this was the car used in transporting the stolen cash register to where it was broken open.

Taking these two offenses together, we believe they forge a chain of circumstantial evidence sufficient to meet the test laid down by our Supreme Court that the evidence must not only be indicative of guilt but must be inconsistent with every reasonable hypothesis of innocence. State v. Hughes, 102 Ariz. at 123, 426 P.2d at 391 (1967). The proof of the two incidents reinforce one another and in this way comply with the rule of *Hughes* that the evidence of the other conduct, criminal in nature, must be sufficient to go to a jury. (426 P.2d at 391.) We believe it is implicit in *Hughes* that this may be done. Were it otherwise, then the defendant could have been identified as the "customer" who "accidentally" made possible one hundred different "till tappings," [2] and he could be convicted of none, because standing alone there would not be sufficient evidence as to any one incident to prove a case beyond reasonable doubt. We do not construe the *Hughes* decision to mandate such a result.

That there is only one other incident rather than one hundred in this case goes to the weight of the evidence rather than to its admissibility. State v. Hardin, 99 Ariz. 56, 59, 406 P.2d 406, 408 (1965); and State v. Quintana, 92 Ariz. 308, 310, 376 P.2d 773, 774 (1962). A case comparable [3] on its facts in which the defendant was convicted of being a lookout for a burglary and in which evidence of previous offenses committed on the same evening was admitted in order to show intent is State v. Carvelo, 45 Hawaii 16, 361 P.2d 45 (1961), (cited in

---

2. Quote is from testimony of Detective Kenneth Krieger in describing the method used in some fifty similar thefts from service stations in the Tucson area which had been investigated by him. R.T. at 96.

3. In *Carvelo, supra,* there were several burglaries purportedly committed by the defendant and others prior to the offense charged, however, all of these other offenses were committed in the same district of the city and within a one-hour span of time. 361 P.2d at 48.

*Hughes,* 426 P.2d at 391). In *Carvelo,* the court said:

> "The proof of the corpus delicti of the burglary charged is unassailable and defendant's physical presence at the scene of it while it was being committed is undisputed. The only real issue open in the case was whether he was mentally present." 361 P.2d at 57.

Applying the same basic principle to two previous acts of taking a woman's purse from a shopping bag is the case of People v. Williams, 6 Cal.2d 500, 58 P.2d 917 (1936). Illustrative cases involving a single previous act of misconduct are: People v. Twiggs, 223 Cal.App.2d 455, 35 Cal.Rptr. 859 (1963) (pickpocketing case); Blackburn v. United States, 171 A.2d 254 (D.C. Mun.Ct.Appeals 1961) (receiving stolen property case); and State v. Kombol, 81 Idaho 530, 347 P.2d 117 (1959) (theft case).

In the case at bar, the real question for jury determination was whether the defendant was "mentally present" at the time of this theft. The evidence of the incident at the other station is material to this *factum probandum.*

Situations in which evidence of other offenses is offered, not to prove a mental state, but to prove identity through a modus operandi, must be distinguished. See, e. g., State v. Finley, 85 Ariz. 327, 338 P.2d 790 (1959). When such is the case, it is required that there be a high degree of similarity between the offenses and an element of uniqueness in the method of committing the crimes so as to give grounds for the inference that the crimes are committed by the same person. See McCormick, Evidence § 157, at 328 (1954). But, when evidence of other acts has bearing upon mental state:

> "The similarity of the other acts need not be as great as under purpose (3) [to prove identity through *modus operandi*] in the text above, nor is a connection by common plan as in purpose (2) [to prove a common plan or scheme] demanded. The trial judge has a range of discretion in determining whether the probative

value justifies admission." McCormick, Evidence § 157, Note 12, at 329 (1954).

■ In exercising his discretion, the trial judge must weigh probative value against prejudice. State v. Chaney, 5 Ariz.App. 530, 538, 428 P.2d 1004, 1012 (1967); McCormick, Evidence § 152, at 319–21 (1954). This trial court was given little opportunity to perform this weighing function because no objection was posed to this evidence when it was presented. And here, as in *Chaney,* the "prejudicial" effect of this evidence lies exclusively in its probative value. There is nothing heinous about driving into a gas station, having the attendant check matters under the hood, and coincidentally being in the station when a theft occurs. It is only to the extent that two similar incidents have occurred, thus tending in some degree to eliminate the hypothesis of coincidence, that the evidence becomes "prejudicial." It is not this type of prejudice that the rules of evidence attempt to eliminate; else guilt could never be proved by circumstantial evidence.

■ The remaining question is whether the court should have specially instructed the jury as to the limited effect to be given to the testimony of the incident at the other service station. That it is reversible error to refuse such an instruction on request is clear. State v. Finley, 85 Ariz. 327, 335, 338 P.2d 790 (1959) (dictum); and see Udall, Arizona Law of Evidence § 116, at 239 (1960).

In this case, though the defendant submitted twelve written instructions on various aspects of the trial, none was submitted limiting the use of this testimony. As we have previously noted, there was no objection to this evidence as it was admitted, though after it was admitted, defendant's counsel made a motion for a mistrial, which was denied by the court. The only record made by defendant's counsel in connection with a limiting instruction was after all instructions had been given to the jury. Before the jury retired, the court asked: "Any additions or correction to the instructions?" The transcript indicates no answer

to this question by defendant's counsel but after the jury had retired to consider its verdict defendant's counsel stated:

"The only objection I have as to the instructions in general is the fact that the trial court failed to give an instruction on the use of prior bad acts, and by failing to instruct the jury as to the validity and relevancy and the weight to be given; and any evidence which dealt with the prior bad acts of the defendant, and failed to instruct the jury as to how they should use any evidence of prior bad acts of the defendant, and any other instructions dealing with any prior bad acts which may be applicable in a case such as this."

The court had carefully instructed the jury as to the elements of the offense charged and the burden of proof beyond a reasonable doubt as to each of these elements. There is no equivocation in these instructions as to what offense the defendant was being tried.

This court has already commented upon the possible detriment to the defendant by singling out evidence of other offenses and giving a special instruction upon the subject. State v. Waits, 1 Ariz.App. 463, 466, 404 P.2d 729 (1965). Experienced defense counsel may very well consider it good trial strategy to fail to ask for such an instruction or to object to such an instruction if proposed. That defense counsel have objected to such an instruction is shown by decisions such as People v. Leyva, 187 Cal.App.2d 249, 9 Cal.Rptr. 469, 473–474 (1960); and Davis v. State, 171 Neb. 333, 106 N.W.2d 490, 497 (1960). In People v. Buchel, 141 Cal.App.2d 91, 296 P.2d 113, 119 (1956), it was noted that when the instruction was given, in a case where evidence of other offenses was erroneously admitted, the instruction only " * * * added to the prejudicial effect of the evidence that should not have been admitted."

It is well settled in this jurisdiction that a defendant cannot raise on appeal the failure to give an instruction unless the same has been requested and unless the defendant requests such an instruction prior to the time the jury retires to consider its verdict. State v. Evans, 88 Ariz. 364, 369, 356 P.2d 1106 (1960); Rule 272, R.Crim.P., 17 A.R.S.; and Rule 51, R.Civ.P., 16 A.R.S.

An exception pertains only when the failure to give an instruction creates fundamental error. State v. Tigue, 95 Ariz. 45, 386 P.2d 402 (1963). Our Supreme Court has on three occasions held that the failure to give this particular limiting instruction is not fundamental error. Burgunder v. State, 55 Ariz. 411, 421, 103 P.2d 256, 260 (1940); Sullivan v. State, 47 Ariz. 224, 233, 55 P.2d 312, 315 (1936); Lewis v. State, 30 Ariz. 466, 472, 248 P. 39, 41 (1926). Other jurisdictions hold that failure to request this instruction constitutes a waiver. Baker v. United States, 310 F.2d 924 (9th Cir.1962), cert. denied, 372 U.S. 954, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963); United States v. Smith, 283 F.2d 760 (2d Cir.1960); Brock v. Commonwealth, 391 S.W.2d 690 (Ky.1965); State v. Scown, 312 S.W.2d 782 (Mo.1958). Though *dicta* statements to the contrary are cited in the appellant's brief, no contrary decisions have come to our attention.

In State v. Waits, 1 Ariz.App. at 466, 404 P.2d 729 we declined to attempt to change the law as laid down by the three above-cited Arizona Supreme Court decisions. We take the same position at this time.

Judgment affirmed.

HATHAWAY, C. J., concurs.

KRUCKER, Judge (dissents).

I cannot agree with the conclusion of the majority opinion that the State introduced sufficient evidence to prove the guilt of the defendant beyond a reasonable doubt. The rule that as an appellate court we are to view the evidence in a light most favorable to upholding the conviction does not require us to perform the acrobatics which the majority did in their efforts to glean from the evidence sufficient facts to make out the elements of grand theft.

In a criminal trial for the crime of theft, the State must prove beyond a reasonable doubt three elements: (1) a taking, or caption, of the personal property of another; (2) a carrying away, or asportation; and (3) criminal intent. In the case at hand, the State proved the following things: (a) that the defendant drove a 1957 Dodge into the gas station at 7:00 p. m.; (b) while defendant was there having his car serviced, the cash register was stolen; (c) that one-half hour later a "dark car" was driven into a desert area close to the service station; (d) that the next morning the stolen cash register was found in the area where the "dark car" had been driven; (e) that tire tracks near where the cash register was found matched the car that had been driven by the defendant at 7:00 the prior evening; (f) that a hubcap found near where the cash register was found fitted the car driven by defendant; (g) that a piece of the cash register found in the car driven by defendant matched a broken part in the cash register stolen from the service station.

There is no showing of defendant's agency in the theft in any respect. The state did not show that he took the cash register, that he carried it away or that he entered into any conspiracy with anyone to commit the crime, or that he had any intent to commit crime. There is positive testimony by the station attendant that the defendant was not out of the car or the driver's seat, and there is no testimony that any other person was at the scene at that time. There is no testimony directly connecting the defendant with the theft of the register. There were no other charges filed against any other person in connection with this incident. There was no showing that the "dark car" seen by Mrs. Smith was the Dodge. There was no time link established putting the Dodge in the desert area that night. It is easy to hypothesize that the Dodge was driven there before or after the time alleged. The hubcap found on the scene is decorated with a FORD emblem. There is no testimony as to the kind of hubcaps on the other three wheels of the Dodge, only that there was one missing.

Mere presence at the scene of the crime is insufficient to establish guilt. State v. George, 95 Ariz. 366, 390 P.2d 899 (1964). All that is present here are the facts described above plus the testimony of the other incident which, according to the majority opinion, " * * * tends, in some degree, to eliminate the hypothesis of coincidence." Since there was never a conviction or even a charge made against anyone arising out of the incident at the Plummer garage. I am at a loss to see how the testimony of defendant's presence there is relevant to prove anything, much less to be used as a tenuous link in the chain of circumstantial evidence which the majority opinion deems sufficient to prove beyond a reasonable doubt the guilt of the accused. All the "prior bad acts" cases cited by the majority concerns situations where the defendant was closely connected with an actual crime. Here, the jury was merely presented a chain of circumstantial evidence with which to speculate. I believe that this case can be disinguished from State v. Mendibles, 5 Ariz.App. 463, 428 P.2d 127 (1967). In Mendibles, the circumstantial evidence went to the jury, besides being much stronger, tended directly to prove elements of the crime charged, while in the instant case the facts relied on can only serve to raise a weak inference, indirectly connecting the defendant with the commission of the crime. The trial court should have granted defendant's motion for a directed verdict of acquittal.

In State v. Hughes, 102 Ariz. 118, 426 P.2d 386 (1967), the court said that circumstantial evidence may properly be considered as proof of a crime only when it is consistent with the theory of guilt of the defendant and is inconsistent with every reasonable hypothesis of his innocence. Here, coincidence is not eliminated. We can still reasonably hypothesize that defendant might not have known that the cash register was stolen while he was in the service

station, or that defendant might not have been present when the cash register was carried away and broken into, or that defendant might have been deceived into being a decoy by the owner of the car which he was driving at the time of the theft. There is no testimony as to how long after defendant drove into the gas station he retained possession of the car, or where the owner of the car was during and after the time of the theft. In State v. Alkhowarizmi, 101 Ariz. 514, 421 P.2d 871 (1966), when faced with a much stronger chain of circumstantial evidence than in the present case, the Arizona Supreme Court reversed a conviction for sodomy, stating:

"* * * the circumstances proven by the state must not only be consistent with the hypothesis that the accused is guilty, but also must be inconsistent with *any* hypothesis or theory which would establish or tend to establish his innocence." (Emphasis supplied)

I do not feel that the State has established a chain of circumstantial evidence inconsistent with any reasonable hypothesis of innocence in this case. The evidence put on falls woefully short of the mark and leaves too many pertinent questions unanswered to allow me to conclude that there is no reasonable doubt that defendant did not commit the crime charged.

The conviction should be reversed.