464 P.2d 995

**STATE of Arizona, Appellee,**

v.

**William C. LESTER, Appellant.**

**No. I CA–CR 229.**

Court of Appeals of Arizona,
Division 1.

Feb. 26, 1970.

Rehearing Denied April 20, 1970.

Review Denied May 26, 1970.

---

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Hess Seaman, Phoenix, for appellant.

KRUCKER, Judge.

The defendant challenges his conviction of assault with intent to commit rape claiming:

(1) The evidence was insufficient to support the jury's verdict.

(2) It was error to allow a police officer to testify as to a conversation with the assault victim.

(3) It was error to give an instruction on circumstantial evidence.

The complaining witness was a 19-year-old girl (hereinafter referred to as Miss H). Since her mother and other relatives with whom she resided planned to move from Phoenix, she decided to seek employment in order to remain in that city. She phoned a telephone number listed in a newspaper advertisement for a live-in housekeeper and companion to a 17-year-old girl. She spoke with the defendant's wife on the telephone and, after a brief discussion, an interview at the defendant's home was arranged for the following day. The interview with the defendant, his wife, and daughter took place as arranged and the following day the defendant phoned Miss H and told her that she was hired and to come over immediately. She packed her clothes and immediately drove over to the defendant's home, where she found him alone in an inebriated condition. An elderly woman, presumably a housekeeper, was in the kitchen. The wife and daughter were not at home.

The defendant asked Miss H to sit down, began talking to her about her potential for a modeling career, and made several telephone calls, purportedly to someone who would be interested in her as a model. He told her that this party suggested that he photograph her in a bikini swimsuit belonging to his daughter and then to send the pictures to him. The wife and daughter arrived home shortly thereafter, and at the defendant's request the daughter produced the bikini suit. The defendant extolled Miss H's physical attributes to his wife and the possibility of her becoming a model. Then, according to Miss H:

"* * * He picked up the swimming suit and told me to go in the bedroom with him so we wouldn't have to talk in front of 'slobs.' And he said he was going to take pictures, and he wanted me to put the swimming suit on to take pictures."

This suggestion inspired no fear on the part of Miss H "because his wife and daughter were in the living room." Since she had been given the impression by his wife and daughter during the initial interview that the defendant was some sort of talent scout, she suspected no improper motive. When they entered the bedroom, the defendant lay down on the bed and told her to change into the swimsuit. She retired to the adjoining bathroom to do so, her modesty amusing the defendant. While

she was in the process of changing, the defendant opened the bathroom door and told her "in that type of business that was ridiculous to act that way and not to be naive."

She thereupon changed quickly and re-entered the bedroom noting that the door to the living room was still ajar. The defendant, who had been lying on the bed, rose and walked over to her, complimenting her on her appearance. He then lifted the top of the swimsuit and proceeded to fondle her. She removed his hands and restored the swimsuit top, but the defendant, pretending to be concerned with the fit of the swimsuit for photographic purposes, continued his manual exploration of Miss H's anatomy:

> "He stepped back a little bit, and then he started to tell me that it would need a little more padding here, or to be cut down a little there, and to be lowered a little. As he was doing this he poked each particular part."

Miss H attempted to abort this exploration, and then defendant summoned the daughter to look at her. The daughter complied, said Miss H looked "fine" and stepped away from the doorway. The defendant thereafter lay down on the bed and told Miss H to shut the door. She did so reluctantly, but since the wife and daughter were in the adjoining room, she "was not really expecting any problems", The defendant attempted, without success, to lure her onto the bed. He then rose from the bed, and when Miss H backed up against the bed in order to stay out of his way, he "grabbed" her and pushed her down on the bed so that she was lying on her back.

A struggle ensued with Miss H trying to fend him off. The defendant told her several times that he was going to show her a "secret". Although she was frightened, she didn't scream or cry out because she didn't want to cause any trouble. She figured that since he was drunk, he didn't know what he was doing and she didn't want to get him in trouble with his family. She managed to push him away long enough so

that she could get up from the bed, and with the defendant hanging on to her right shoulder, she opened the door to the living room and got out. The wife and daughter were in the living room, some confusion ensued, and Miss H managed to retrieve her clothes and purse and flee from the house clad in the bikini swimsuit.

She jumped into her car which was parked outside and drove to a nearby Penney's Department Store where her mother worked. While stopped for a traffic light, she managed to don her shirt. She ran into the store, found her mother, who, because the daughter was crying and couldn't talk, summoned the store security police officer. When she calmed down a bit, she related to the security officer what had happened. According to Miss H, about six minutes had elapsed from the time she left the defendant's house until she reached Penney's.

■ The defendant contends that the State's case failed in that there was no proof of an intent to commit rape. He contends, in essence, that his "improper, indecent and lewd advances" constituted no more than an attempt to seduce. The gravamen of the offense of assault with intent to commit rape is the intent with which the assault was made, namely, whether the accused intended to consummate the rape regardless of resistance and absence of consent. Gilchrist v. State, Fla.App., 177 So.2d 777 (1965), cert. den. 384 U.S. 966, 86 S.Ct. 1598, 16 L.Ed.2d 678 (1966); People v. Kolar, 66 Ill.App.2d 347, 214 N.E. 2d 519 (1966); see also, 75 C.J.S. Rape § 77(a). It is not necessary for the accused to have verbally expressed this intent, State v. La Vine, 68 Wash.2d 83, 411 P.2d 436 (1966), since the requisite intent is a state of mind which is seldom, if ever, susceptible of proof by direct evidence and must ordinarily be proven by circumstantial evidence. State v. Gammons, 260 N.C. 753, 133 S.E.2d 649 (1963). Intent may be inferred from the acts of the accused and the circumstances of the assault. People v. Kolar, supra.

The question of whether the defendant had the requisite intent was one for the jury and only if the facts afforded no ground for such inference was it permissible for the trial court to determine that no such intent existed. People v. Padilla, 210 Cal.App.2d 541, 26 Cal.Rptr. 765 (1962). We believe that the trial court properly submitted the question to the jury. The defendant's conversations with Miss H during the absence of his wife and daughter indicated a more than normal preoccupation with sex. Conceivably his initial overtures could be construed as mere importuning or invitations. However, his subsequent conduct in pushing Miss H on to the bed, forcibly putting his hands under her clothes, while, according to her, "he was standing right up against me, sort of leaning over", and attempting to unzip his trousers, despite her struggles and protests, would support an inference that he intended to have intercourse with her by force and against her will.

The defendant contends the trial court erred in admitting the testimony of the Penney's security officer who repeated the details of the complaint made to him by Miss H. The admissibility of such testimony as within the *res gestae* exception to the hearsay rule is a matter within the sound discretion of the trial court and each case must depend upon its own facts. State v. Randolph, 99 Ariz. 253, 408 P.2d 397 (1965). However, before a hearsay statement can be admitted under the *res gestae* or spontaneous utterance exception to the hearsay rule, there must be a startling event, the words must be spoken soon after the event so as not to give the person speaking the words time to fabricate, and the words spoken must relate to the startling event. State v. Woolery, 93 Ariz. 76, 378 P.2d 751 (1963); State v. Hunt, 2 Ariz. App. 6, 406 P.2d 208 (1965). Spontaneity is the most important factor governing admissibility of such utterances. Applying these principles to the facts of this case,

we find no error in the admission of the officer's testimony.

The defendant's final attack on his conviction is predicated on the giving, over his objection, the following instruction on circumstantial evidence:

" * * * A fact may be proved by either direct or circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness.

Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence may be considered by you together with all the other evidence in the case in arriving at a verdict."

The defendant objected to the instruction on the grounds that all of the evidence was direct, hence no question of circumstantial evidence was involved. We do not believe that this objection was well-taken. Proof of mental state is always difficult and almost invariably must be circumstantial in nature. State v. Gammons, supra; State v. Hernandez, 7 Ariz.App. 200, 437 P.2d 952 (1968). There being no direct evidence of the defendant's intent and the circumstances being such as would warrant an inference that he had the requisite intent, we find no merit in defendant's complaint. We further note that the trial court did not instruct on the probative force of circumstantial evidence, and properly so, since the only element not established by direct evidence was that of intent. *See*, State v. Miller, 104 Ariz. 335, 452 P.2d 509 (1969).

Judgment affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.