[No. F002215. Fifth Dist. Apr. 6, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
TOMAS PHILLIP LUCERO, Defendant and Appellant.

246

## COUNSEL

Roger Harden Spaulding, under appointment by the Court of Appeal, and Stone & Spaulding for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Willard F. Jones and William George Prahl, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOOLPERT, J.**—When should the court return a father to the home in which he has sexually abused his daughter for years, rather than sentence him to prison? Only when the sentencing judge, after careful consideration of the law which permits that course of action, determines with confidence that all the statutory requirements have been met and penal confinement is not the more appropriate disposition. In this case the court rejected the probation and rehabilitation alternative. Defendant seeks to establish his eligibility for probation and asserts he should have been given an opportunity to reunite the family.

Defendant Tomas Phillip Lucero was charged in a two-count information with incest, a violation of Penal Code section 285,[1] and with a lewd and

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

lascivious act on a child under the age of 14, a violation of section 288. Defendant pled guilty.

The court, before pronouncing sentence, requested psychological evaluation of defendant. At the time of sentencing, the court had before it three psychological evaluations of defendant, a probation report, a report from the public welfare department, letters of reference and a statement by the victim. The court sentenced defendant to the middle base term of six years for violating section 288. Defendant was also sentenced to two years for violating section 285, which was stayed pursuant to section 654.

## THE FACTS

The facts of the case may be briefly stated. Defendant began a 12-year incestuous relationship with his daughter when she was 4 years old. Acts of fondling and oral copulation gave way to sexual intercourse before the child reached menarche. When the girl was 16 years old she finally told others what had been transpiring. At the preliminary hearing she testified that fear of a breakup of the family and her father's threat to kill himself had kept her silent.

Defendant, at the time of his conviction, had been married 19 years and had 4 other children, all sons. He was the sole wage earner for the family. His only prior conviction was for drunk driving.

Defendant was confronted with the daughter's accusations by his wife on the morning of his arrest. He took a gun to work and inferentially threatened to kill himself if the police attempted to arrest him. Upon arrest, police found the gun in his lunch pail.

After defendant was arrested, the victim and her mother had a confrontation. Basically, the mother accused the daughter of instigating the whole affair. The daughter, apparently suicidal, was placed in a foster home and remained there through the time of sentencing. After his plea of guilty, defendant's comments to those who interviewed him were self-protective and an obvious attempt to shift the moral blame to his daughter who was still recovering from suicidal feelings.

## PROBATION RESTRICTIONS

■ First defendant argues that the information did not charge him in a manner which brought him within the section 1203.066 probation restrictions, and second, even if subject to the section, he should have been placed on probation because rehabilitation was a viable alternative.

Section 1203.066, in pertinent part, reads: "(a) Notwithstanding the provisions of Section 1203, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, nor shall a finding bringing the defendant within the provision of this section be stricken pursuant to Section 1385 for any of the following persons:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(8) A person who in violating Section 288 has substantial sexual conduct with a victim under the age of 11 years.

"(9) A person who occupies a position of special trust and commits an act of substantial sexual conduct. 'Position of special trust' means that position occupied by a person in a position of authority who by reason of that position is able to exercise undue influence over the victim. Position of authority includes, but is not limited to, the position occupied by a natural parent, adoptive parent, stepparent, foster parent, relative, household member, adult youth leader, recreational director who is an adult, adult athletic manager, adult coach, teacher, counselor, religious leader, doctor, or employer.

"(b) 'Substantial sexual conduct' means penetration of the vagina or rectum by the penis of the offender or by any foreign object, oral copulation, or masturbation of either the victim or the offender." Defendant points to subdivision (d) of section 1203.066 and argues that the information filed against defendant was insufficient to place him within either category. Subdivision (d) reads: "(d) The existence of any fact which would make a person ineligible for probation under subdivision (a) shall be alleged in the accusatory pleading, and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury."

Count I of the information alleges that defendant "on or about the past 12 years" did incestuously have sexual intercourse with his daughter." Count II alleges defendant "on or about the past 12 years" committed lewd and lascivious acts on the victim, a child under the age of 14.

Although a very strict reading of the information may not specifically allege acts falling under section 1203.066, subdivision (a)(8), there is no doubt that defendant's acts fall under section 1203.066, subdivision (a)(9). Count I alleges that defendant had sexual intercourse with the victim, clearly an act of "substantial sexual contact," as defined in subdivision (b). Count

I also specifically identifies the victim as defendant's daughter, making him a person who occupies a "position of special trust."

Defendant complains that for subdivision (a)(9) to apply it must have been shown that he was indeed "trusted" by the victim and that there was no such showing in this case. This hypertechnical reading of subdivision (a)(9) must be rejected.

■ The language of subdivision (a)(9) singles out certain positions of authority in which it is presumed that submission to authority is commonplace, resulting in a potential for undue influence over the victim. Other trust relationships may be proved. ■ However, in this case there was no need for a finding beyond that implicit in the admitted relationship of father and young daughter living in the same household.

### DENIAL OF PROBATION

Section 1203.066, subdivision (c), reads: "(c) Paragraphs (7), (8), and (9) of subdivision (a) shall not apply when the court makes all of the following findings:

"(1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the household.

"(2) Imprisonment of the defendant is not in the best interest of the child.

"(3) Rehabilitation of the defendant is feasible in a recognized treatment program designed to deal with child molestation, and if the defendant is to remain in the household, a program that is specifically designed to deal with molestation within the family.

"(4) There is no threat of physical harm to the child victim if there is no imprisonment. The court upon making its findings pursuant to this subdivision is not precluded from sentencing the defendant to jail or prison, but retains the discretion not to. The court shall state its reasons on the record for whatever sentence it imposes on the defendant." ■ Defendant claims that the trial court erroneously made findings as to the four elements mentioned in subdivision (c) and thus abused its discretion. (*People* v. *Wade* (1959) 53 Cal.2d 322, 338-339 [1 Cal.Rptr. 683, 348 P.2d 116].) Defendant specifically disputes the trial court's findings that no recognized treatment program existed and that there existed any physical threat to the victim. Defendant also complains that although the court noted the conflicting opin-

ions of the psychological evaluators as to whether imprisonment would be in the best interests of the victim, it failed to pronounce its own finding.

In reading the transcript of the sentencing hearing it becomes obvious that in denying probation the trial court approached this burdensome task with great care, making alternative findings. Initially, the court found that all of subdivision (c) criteria were not met. The court, apparently in light of one doctor's report, felt there was no locally available recognized treatment program. The court also felt the potential for physical harm to the victim would exist absent defendant's incarceration.

Alternatively the court stated that even if it made findings allowing it to place defendant on probation, it would not be appropriate to do so. The court noted that the extended period of time over which defendant carried on the felonious conduct, the highly vulnerable position of the victim because of the family relationship, and the apparent premeditation of defendant's acts all contributed to the conclusion that probation should be denied.

The People suggest that these special provisions are not of appellate significance since the sentencing judge stated an opposition to probation even if all factors were satisfied. We disagree if the suggestion implies that the rehabilitation alternative need not be given serious consideration. We agree if, as in this case, the court has in good faith considered the offense, the offender, the factors which limit the court's discretion, and has only then indicated probation is not a suitable alternative. We also agree if the suggestion merely assumes that we will give great weight to the sentencing court's exercise of discretion. The lower court must be convinced that each factor is clearly satisfied. The sentencing judge, not those sitting in review, assumes the burden of misjudging the future when permitting the offender to return to the home. ■ Even when satisfied of eligibility, the nature of the crime and the past effect on the victim may properly cause the judge to impose imprisonment and thereby override predictably viable rehabilitation.

■ We need not delve into an evidentiary analysis of the court's exercise of discretion. It is apparent the court was never convinced it would be in the victim's interest to return the father to a home which was already divided, or that to do so would not involve danger. Section 1203.066, subdivision (c)(4) requires that the court find there is "no threat of physical harm to the child victim if there is no imprisonment." The court was not satisfied that there would be no threat. Defendant had possessed a gun for uncertain purposes and by the time of sentencing had already joined his wife in blaming the victim for his arrest.

Furthermore, although arrangements might be made for a psychiatrist to provide counseling, it did not appear that a formal treatment program was available. The court found that there was no local program for child molesters. Section 1203.066, subdivision (c)(3), states that the court must find: "(3) Rehabilitation of the defendant is feasible in a recognized treatment program designed to deal with child molestation, and if the defendant is to remain in the household, a program that is specifically designed to deal with molestation within the family."

The experts could not agree what is meant by "recognized treatment program." The legislative history of section 1203.066 sheds no light on the appropriate interpretation to be given this requirement. Looking to the plain language of the statute, it appears that the Legislature contemplated something more than the availability of a psychologist or psychiatrist dealing with the problem on an ad hoc basis. By the use of the word "recognized," the Legislature appears to contemplate a formalized program to treat child molesters or child molestation within the family. The word "program" connotes a set therapeutic course with specified goals, with whatever supportive services might be necessary when the family is involved. Examples of such program authorizations may be found in Welfare and Institutions Code sections 5450 and 5600 and related sections.

The court was not satisfied that the best interests of the victim, or her safety, would be served by returning the father to the home from which *she* had been ostracized. Neither was it clear that a "program" was available to assure against a misjudgment on the court's part that the family could unite to overcome the past, assuming the court might entertain that point of view. Assuming local services were available, the court had the responsibility to consider the suitability of the program to the circumstances. The court cannot be faulted for being unconvinced that an occasional visit to a doctor's office would qualify as a recognized program and be suitable treatment.

The judgment is affirmed.

Franson, Acting P. J., and Hamlin, J., concurred.