Filed 1/13/26  P. v. Fernandez CA1/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

THE PEOPLE,

     Plaintiff and Respondent,

v.

ROBERT PICART FERNANDEZ,

     Defendant and Appellant.

A170744

(Solano County
 Super. Ct. No. VCR237086)

Picart Fernandez was convicted of five sex offenses against his niece, R.R.  He claims trial court errors and ineffective assistance of counsel prejudiced his defense.  We affirm the judgment.

## I.  BACKGROUND

In 2018 and 2019, Picart Fernandez lived with his wife I.F. in Santa Maria and they worked together in the life insurance business.  They would stay with I.F.'s sister R.V. in Vallejo when traveling for business and to visit family.  R.V. lived in a three-level home with her partner, her son N.P., her daughter R.R., and her three other children.  Several extended family members also lived with R.V., including her younger sister I.P. and I.P's daughter.

### A.  Picart Fernandez Abuses R.R.

R.R. testified about five times when Picart Fernandez abused her during visits to R.V.'s home during this period, when she was ten years old or

younger. On one occasion, he told her to sit on his lap and touched her chest and vagina underneath her clothes. R.R.'s younger cousin and brother were in the room but were focused on their iPhones. On another occasion, Picart Fernandez told R.R. that she should sleep on a couch in the room where he and I.F. slept during their visits. While I.F. was asleep, Picart Fernandez touched R.R. on her vagina and "shoved [two fingers] up there."

Another time, Picart Fernandez pulled on R.R.'s shirt or grabbed her arm and told her to go into the bathroom. He shut the door and told R.R. to take off her clothes and underwear. When she did, he touched her chest and vagina and "put [his fingers] in" her vagina. He put his hands on R.R.'s mouth, said "to be quiet," and told her not to tell anyone or she could get in trouble. R.R. remembered "a little bit" about another incident in the bathroom, but did not testify to the details.

Once when R.R. was feeding her hamsters in the garage, Picart Fernandez rubbed her chest under her shirt, told her not to tell anyone, and gave her $20 "to buy stuff for the hamsters." Finally, at the end of one of his visits, Picart Fernandez put his hands under R.R.'s shirt and touched her chest near the front door while saying goodbye.

## B. R.R. Discloses the Abuse After I.P.'s Reports

In October 2020, 27-year-old I.P. went with her young daughter and 19-year-old N.P. to visit I.F. and Picart Fernandez at their home in Santa Maria. As I.P. went upstairs with bags of her and her daughter's belongings, Picart Fernandez hugged her, rubbed her butt, told her to turn around, and fondled her breasts under her shirt and over her bra. It happened "very fast." I.P. was "shocked" and called for N.P. to come downstairs to help her get their other things. N.P. looked down the stairs and saw Picart Fernandez touching

I.P.'s butt. Afterwards, N.P. saw that I.P. was "shaking," and she told him she was nervous and to stay close to her.

Later that evening, Picart Fernandez sat next to I.P. in the garage, rubbed her stomach under her shirt, and moved his hand under her leggings towards her vagina, over her underwear. I.P.'s daughter asked him " 'Why are you touching my mom,' " and (though I.P. was not pregnant) Picart Fernandez said, " 'we're just checking the baby inside your mom's tummy.' "

I.P. told I.F. that Picart Fernandez was touching her and that she was scared and I.F. said, " 'No, it's not like that' " and told I.P to lock the door to her room when she went to bed. Though I.P. and N.P. had planned to stay in Santa Maria longer, they left before sunrise the next morning without waking their hosts.

Back in I.P.'s bedroom in Vallejo, I.P. discussed what happened in Santa Maria with N.P. and his older sister E.V. Someone called R.R. into the room, and she overheard the conversation. Either N.P. or E.V. asked R.R. if Picart Fernandez had ever touched her inappropriately. R.R. said yes. She told her siblings that Picart Fernandez would take her to the bathroom, "put his hand on her pants and would touch her private areas and he would also touch her upper private areas and he would even . . . cover her mouth so she couldn't scream." R.R. told her siblings this happened more than 10 times.

N.P. and E.V. told R.V., who spoke with R.R. about Picart Fernandez directly and then phoned I.F. and asked her to come to Vallejo to discuss R.R.'s and I.P.'s reports. R.V. also called Kaiser to make an appointment for R.R. to see a psychologist. She told the person who answered her call what R.R. had reported and understood that Kaiser would contact Child Protective Services.

I.F. came to Vallejo and stayed for three nights, then R.V. and her partner drove her back to Santa Maria.  Picart Fernandez was there when they dropped her off.  At some point, he was alone with R.V.'s partner while R.V. was in the bathroom.  Picart Fernandez cried and told R.V.'s partner, " 'I'm sorry for what happened to [R.R.].' "  But when R.V. told Picart Fernandez directly what R.R. had reported, he said, " 'I don't remember doing this.' "  He said what happened with I.P. " 'was an accident' " and he did not "want to be in jail."

In November 2020, a police officer contacted R.V.  He arranged for R.R. to be interviewed at the Courage Center in Fairfield; the interview was played for the jury at trial.  The officer also interviewed R.V. and her partner, N.P., E.P., and I.P.

## C.  *Picart Fernandez Is Tried and Convicted*

Picart Fernandez was arrested and charged with two counts of sexual penetration with R.R. when she was under 10 years of age (Pen. Code, § 288.7, subd. (b))[1] and three counts of lewd acts upon R.R. when she was under 14 (§ 288, subd. (a)).  Two aggravating circumstances were alleged: the victim was particularly vulnerable and Picart Fernandez took advantage of a position of trust or confidence to commit the offenses.  (Cal. Rules of Court, rule 4.421(a)(3) & (11).)

After a trial in 2024, a jury found Picart Fernandez guilty of all the charged offenses, found the aggravating circumstances true as to the lewd act offenses, and found that one of those offenses involved substantial sexual conduct (§ 1203.066, subd. (a)(8)).  The trial court sentenced Picart Fernandez to a total of 30 years to life in prison for the sexual penetration offenses, plus a total of 10 years in prison for the lewd act offenses.

---

[1] Undesignated statutory references are to the Penal Code.

4

## II.  DISCUSSION

### A.  Uncharged Misconduct

Picart Fernandez claims the trial court erred by allowing the People to introduce evidence of the uncharged sexual misconduct alleged by I.P.  He argues the court failed to properly exercise its discretion to admit or exclude the evidence under Evidence Code sections 352 and 1108.  We find no error.

1.    *Governing Legal Principles*

"Subject to Evidence Code section 352, Evidence Code section 1108 permits a jury to consider prior incidents of sexual misconduct for the purpose of showing a defendant's propensity to commit offenses of the same type, and essentially" to "determin[e] whether the defendant is guilty of the current sexual offense charge."  (*People v. Miramontes* (2010) 189 Cal.App.4th 1085, 1096.)  "[T]here is a strong presumption in favor of admitting . . . evidence under Evidence Code section 1108 to show propensity to commit charged crimes."  (*People v. Merriman* (2014) 60 Cal.4th 1, 62.)

To determine whether such evidence is admissible, "trial courts must engage in a 'careful weighing process' under [Evidence Code] section 352."  (*People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 823–824.)  The court's "determination should be guided by such factors as the 'nature, relevance, and possible remoteness' of the evidence, 'the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of

the . . . offenses, or excluding irrelevant though inflammatory [surrounding] details.' " (*People v. Dworak* (2021) 11 Cal.5th 881, 900.)

We review the trial court's decision for abuse of discretion. (*People v. Daveggio and Michaud*, *supra,* 4 Cal.5th at p. 824.)

2.    *Analysis*

The People filed a motion in limine to introduce evidence concerning I.P.'s allegations under Evidence Code section 1108; Picart Fernandez objected and moved to exclude such evidence as unduly prejudicial, citing analysis of Evidence Code section 352 in *People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).

Before inviting argument on the parties' motions, the trial court noted "[i]t seems . . . that the incident with [I.P.] comes in regardless of 1108," to explain what prompted R.R.'s delayed reporting. The prosecutor responded by requesting "an explicit finding" that the evidence was admitted under Evidence Code section 1108, so he could "argue propensity." The court made that ruling, observing that if it were to exclude the evidence, "it would be under 352" as "unreasonably confusing" because "this is an adult as opposed to a child." The court explained that it had considered this and "several" other grounds for "a 352 argument," but ultimately rejected them. Since evidence of I.P.'s allegations would already come in for another purpose, the court would not exclude the evidence "under 352."[2]

---

[2] We disagree with the People's claim that Picart Fernandez forfeited his objection to this evidence by failing to request a more detailed statement of the court's reasoning. Picart Fernandez objected that the evidence was unduly prejudicial, which " ' "fairly inform[ed] the trial court, as well as the party offering the evidence," ' " of the ground for exclusion he now urges on appeal, and the record reflects that the court and the prosecutor understood his objection and responded to it. (*People v. Brooks* (2017) 3 Cal.5th 1, 42.)

6

We find no abuse of discretion in the trial court's ruling. Any confusion or prejudice that might have resulted from the age gap between I.P. and R.R. was outweighed by the strong probative value of I.P.'s allegations, which showed Picart Fernandez's propensity to commit sexual misconduct against younger females in family members' homes during moments when others were not present or paying attention. (See *Ewoldt, supra,* 7 Cal.4th at pp. 404–405 [evidence of defendant's uncharged molestation of victim's older sister was properly admitted under Evidence Code sections 1101 and 352]; *People v. Falsetta* (1999) 21 Cal.4th 903, 919 [prior offenses were properly admitted; approving *People v. Soto* (1998) 64 Cal.App.4th 966, 991, which upheld admission of prior offense that was "extremely probative of appellant's sexual misconduct when left alone with young female relatives"].) The acts I.P. described were not remote in time from the charged crimes, and they were less inflammatory. I.P. was particularly credible given her age, her prompt reporting, and N.P.'s corroboration of her story. Her testimony did not consume undue time at trial, and her description of two brief incidents during a single visit to her sister I.F.'s home was unlikely to confuse or distract the jury.

Picart Fernandez faults the trial court for failing to spell out its analysis on the record. But this was not required. "Although a more nuanced analysis . . . might have been beneficial, it was not incumbent on the trial court to undertake such an endeavor absent a specific objection and request from counsel," which was lacking here. (*People v. Thomas* (2023) 14 Cal.5th 327, 366.) The court was not required to " 'expressly weigh prejudice against probative value or even expressly state that it [did] so, if the record as a whole shows [it] was aware of and performed its balancing function under Evidence Code section 352.' " (*People v. Lewis* (2009) 46 Cal.4th 1255, 1285.)

The record shows that here. In discussing the admissibility of this uncharged conduct, the court—at various times during in limine motions—considered its potential for confusion, that it occurred less than one year after the final charged offense against R.R., and that it involved the 27-year-old sister of Picart Fernandez's wife, among other "issues why there was a 352 argument."

Relatedly, Picart Fernandez seems to claim the trial court's references to the admission of I.P.'s allegations for another purpose (under section 1101, subdivision (b) to explain R.R.'s disclosure of the assaults) were improper or showed the court applied an incorrect legal standard. Not so. The court opined that any prejudice to Picart Fernandez was reduced because the jury would already be hearing this evidence, a conclusion Picart Fernandez does not take issue with. Even if the court was wrong about this, it was well within its discretion to admit I.P.'s allegations for the reasons we have already discussed. We refuse Picart Fernandez's invitation to speculate, contrary to the record, that the court found the admission of I.P.'s allegations for another purpose to be dispositive and therefore "did not run a proper 352 analysis." (See *People v. Garcia* (2025) 115 Cal.App.5th 92, 105 [rejecting defendant's "speculation that the court did the opposite of what it said"].)

## B. Aggravating Factors

Picart Fernandez claims the evidence presented at his *preliminary hearing* was inadequate to support true findings on the two aggravating factors presented to the jury: R.R. was particularly vulnerable and Picart Fernandez took advantage of a position of trust or confidence to commit the offenses. (Cal. Rules of Court, rule 4.421(a)(3) & (11).) Therefore, he argues, the trial court erred by permitting the People to amend the information to allege these aggravating factors. We do not agree.

8

1. *Forfeiture*

In his opening brief, Picart Fernandez presented no argument directed to the evidence that he took advantage of a position of trust. He thereby forfeited his challenge as to this aggravating factor. (*In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 622 [party asserting trial court error may not rest on the bare assertion of error but must present argument and legal authority on each point]; *People v. Dunn* (2025) 18 Cal.5th 129, 183, fn. 13 [" 'We need not, and typically do not, address arguments raised for the first time in a reply brief.' "].) For the same reason, he also forfeited the argument that the aggravating factors the jury found true are unconstitutional. Nevertheless, we exercise our discretion to consider both contentions.

2. *Constitutional Challenges*

We consider Picart Fernandez's constitutional challenges first. He relies on *Lovelace v. Superior Court* (2025) 108 Cal.App.5th 1081 (*Lovelace*), an opinion by our colleagues in Division Four. *Lovelace* held that the "broad, open-ended residual clause in rule 4.421(c)"—covering " 'any other factors that reasonably relate to the defendant or the circumstances under which the crime was committed' "—violated the separation of powers clause of the California Constitution. (*Lovelace, supra,* 108 Cal.App.5th at pp. 1088–1089 [describing the residual clause as "so vacuous as to be devoid of meaning"].) In doing so, it discussed and distinguished *Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65 (*Chavez Zepeda*), an opinion in which the same justices who decided *Lovelace* rejected constitutional challenges to the aggravating factors at issue here. (*Lovelace, supra,* 108 Cal.App.5th at p. 1093 [noting that among the aggravating factors at issue in *Chavez Zepeda* were "rule 4.421(a)(3) (vulnerability of victim)" and "(a)(11) (defendant took

9

advantage of position of trust or confidence)"].)  Our Supreme Court denied review in *Chavez Zepeda* in 2024.  (*Chavez Zepeda v. Superior Court*, review denied Feb. 14, 2024, S283201.)

Noticeably, Picart Fernandez does not acknowledge or discuss *Chavez Zepeda*, which directly refutes his argument that these aggravating factors are unconstitutionally vague or violate separation of powers.  (*Chavez Zepeda v. Superior Court, supra*, 97 Cal.App.5th at pp. 91–92 [individual factors listed in rule 4.421 are not invalid simply because they use qualitative terms that may not be defined before the jury is instructed].)  And we are aware of no authority to the contrary.  Absent any argument by Picart Fernandez that *Chavez Zepeda* was wrongly decided, we will follow its persuasive analysis and reject his constitutional challenges to the aggravating factors found true in his case.

3.  *Evidentiary Challenges*

*Chavez Zepeda* also stands in opposition to Picart Fernandez's claim that aggravating circumstances need to be supported by evidence presented at the preliminary hearing.  (*Chavez Zepeda, supra*, 97 Cal.App.5th at p. 97 [holding to the contrary: aggravating circumstances need not be supported by evidence at the preliminary hearing].)  Remarkably, Picart Fernandez repetitively cites *Chavez Zepeda* to support his claim.[3]

---

[3] Considering this mischaracterization and his reliance on *Lovelace* without addressing its lengthy discussion of *Chavez Zepeda*, we remind counsel of the importance of accurately characterizing authorities presented to this court, and, when appropriate, candidly acknowledging contrary authorities.  (See *Howard Jarvis Taxpayers Assn. v. City and County of San Francisco* (2021) 60 Cal.App.5th 227, 232, fn. 4; Rules Prof. Conduct, rule 3.3(a)(2) ["A lawyer shall not: [¶] ... [¶] (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel, or

Even assuming the People had been required to prove aggravating factors at the preliminary hearing, the evidence presented was sufficient. Beyond her young age, evidence presented at the hearing showed R.R. to be "particularly vulnerable" because Picart Fernandez committed the assaults by either creating, or taking advantage of, R.R.'s isolation. (See *People v. DeHoyos* (2013) 57 Cal.4th 79, 155 [victim was particularly vulnerable where defendant "took advantage of [her] location and isolation"]; CALCRIM No. 3226 [particularly vulnerable "includes being defenseless, unguarded, unprotected, or otherwise susceptible to the defendant's criminal act to a special or unusual degree"]; see also *People v. Fernandez* (1990) 226 Cal.App.3d 669, 680 ["where, as here, an age range factor is an element of the offense, vulnerability based on age is generally not a proper aggravating factor"].) When staying in the same house as R.R., he accomplished his crimes by pulling R.R. into a bathroom or approaching her after others had left the house or as they slept. Picart Fernandez also leveraged his trusted relationship with R.R. as an uncle and "father figure" to commit the charged crimes.[4] (See *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1263

---

knowingly misquote to a tribunal the language of a book, statute, decision or other authority" (fns. omitted)].)

[4] Picart Fernandez cites *People v. Lucero* (1984) 154 Cal.App.3d 245, 250 for the proposition that "the mere existence of a familial bond is insufficient" to show a trusted relationship. The opinion holds almost exactly the opposite. (*Ibid.* ["there was no need for a finding beyond that implicit in the admitted relationship of father and young daughter living in the same household," construing former section 1203.066, subdivision (a)(9)].) Similarly, Picart Fernandez cites *People v. Franklin* (1994) 25 Cal.App.4th 328, 337–338 to argue that the "trust afforded to a visiting family member is inherent in many familial abuse cases and does not, without more," support a finding of a trusted relationship. Again, this seriously mischaracterizes the cited authority. (*Id.* at p. 337 [rejecting defendant's argument against an aggravating factor "that in a resident child molestation case, the occupation

11

[aggravating factor present where defendant had "quasi-paternal relationship" with the victim encouraged by the victim's mother].) Additionally, after the first assault, he used his position of trust to tell R.R. to "be quiet" or "he might get in trouble." R.V. and a police officer witness testified about these circumstances in detail during the preliminary hearing.

As no error occurred at the preliminary hearing concerning aggravated circumstances, we reject Picart Fernandez's argument that the court abused its discretion by allowing the information to be amended to add these aggravating factors.

## C. Ineffective Assistance of Counsel

Finally, Picart Fernandez asserts that he suffered prejudicial ineffective assistance of counsel on several grounds. The record does not support his claims.

### 1. *Governing Legal Principles*

Ineffective assistance means counsel erred so seriously that they were "not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) To establish ineffective assistance, the defendant must show by a preponderance of the evidence that "(1) counsel's performance . . . fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*People v. Centeno* (2014) 60 Cal.4th 659, 674.)

In general, "[w]e presume 'counsel's conduct falls within the wide range of reasonable professional assistance' " and give "great deference to counsel's

---

of a position of trust is a factor which is present in virtually all cases," construing section 288.5, subdivision (a)].)

tactical decisions." (*People v. Lewis* (2001) 25 Cal.4th 610, 674.)  Because it is inappropriate for us "to speculate about" counsel's strategy, when counsel's reasoning is not apparent, we will not assume inadequate representation unless the record "discloses ' "no conceivable tactical purpose" ' for counsel's act or omission." (*Id.* at pp. 674–675.)

    2.    *Analysis*

Picart Fernandez claims his trial counsel failed to retain an expert witness to testify about the veracity of children claiming sexual abuse.  He further contends his counsel's investigation was otherwise inadequate, as evidenced by the lack of record documents showing any request for funds for investigation or ancillary services.  However, "[t]he record does not reflect what evidence might have been presented" as a result of further investigation or efforts to retain an expert, so we are "unable to infer anything about its existence, probative force, or the probable consequences at trial, had such evidence been presented." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1033.)  As to the lack of a defense expert, counsel could have "rationally conclude[d] that it would be counterproductive" to "highlight[]" the People's expert testimony about child sexual abuse accommodation syndrome (CSAAS) by presenting more testimony about child victims generally.[5]

---

[5] The prosecution's expert witness on CSAAS offered no opinion about Picart Fernandez's guilt.  Her role was to "provide education about the dynamics of child sexual abuse" and information to help jurors understand why child victims might be reluctant to disclose abuse (e.g., why they might not cry when asked about what happened to them).  This record does not support a conclusion that there was " 'no conceivable tactical purpose[]' " for not presenting additional CSAAS expert testimony. (*People v. Lewis, supra,* 25 Cal.4th at p. 674.)  Indeed, to emphasize its main argument that the assaults upon R.R. could not have happened the way she claimed, the defense closing statement discounted the expert's CSAAS testimony as "general background information about how [different kids] can sometimes react."

(*People v. Mateo* (2016) 243 Cal.App.4th 1063, 1076 ["Because the record sheds no light on why counsel did not request [jury instruction on CSAAS]," the court "cannot reach the merits of the claim of ineffective assistance of counsel"].)  Counsel instead focused on specific inconsistencies in R.R.'s reporting, the limited time Picart Fernandez spent at R.V.'s home during the period in question, and the presence of other adults in the home when the offenses happened.  Picart Fernandez's argument about counsel's investigation and strategy is mere " 'speculation,' " which is inadequate to show ineffective assistance of counsel.  (*People v. Wash* (1993) 6 Cal.4th 215, 269.)

Picart Fernandez further complains that his trial counsel failed to ensure the accusatory pleading was read to the jury per section 1093 so it was clear what he "was actually on trial for"[6] in light of the testimony concerning I.P.'s allegations.  Assuming for the sake of discussion that this is true (and overlooking trial counsel's apparent forfeiture of the issue),[7] there was no prejudice.  The jury was instructed as to the charged crimes and their elements.  It was specifically informed that I.P.'s allegations were not

---

[6] Section 1093 sets forth the order of events in a felony trial after the jury is impaneled and sworn, and requires the clerk to read the accusatory pleading to the jury and to state to them the defendant's plea. (§ 1093, subd. (a).)  Picart Fernandez cites *People v. Darmiento* (1966) 243 Cal.App.2d 358, 368 for the proposition that the purpose of reading the information is to provide a clear and authoritative statement of what the defendant is "actually on trial for."  That case does not address the requirement that the accusatory pleading be read to the jury.

[7] The People acknowledge that nothing in the record on appeal shows the clerk read the information to the jury, but note that transcripts of the voir dire proceedings are not included in that record.  This alone is grounds to reject Picart Fernandez's argument.  (See *People v. Wheatley* (1891) 88 Cal. 114, 120 [where the record does not show that "the information was not read by the clerk to the jury," a reviewing court must "presume that it was"].)

14

charged crimes and how it should consider them.  In particular, the jury was instructed that if Picart Fernandez committed the uncharged misconduct against I.P., that was "only one factor to consider" and was "not sufficient by itself to prove" him "guilty of the crimes that are charged here."  With these instructions, any failure to formally read the information to the jury was harmless.  (*People v. Twiggs* (1963) 223 Cal.App.2d 455, 464 [failure to read accusatory pleading was harmless where record showed "the jury must have been aware of the accusation and defendant's plea"; rejecting claim of ineffective assistance of counsel]; see also *People v. Wader* (1993) 5 Cal.4th 610, 646 [any error in reading information, including counts that were later severed, was harmless].)  Picart Fernandez has not shown otherwise.

## III.  DISPOSITION

The judgment is affirmed.

_____
SMILEY, J.

WE CONCUR:


_____
HUMES, P. J.


_____
LANGHORNE WILSON, J.


*People v. Fernandez / A170744*

15